Argued and submitted May 16, affirmed October 8, 2008

Svetlana ROGOZHNIKOV,
as Personal Representative of
the Estate of Grigory Rogozhnikov,
*Plaintiff-Appellant,*

*v.*

ESSEX INSURANCE COMPANY,
a foreign corporation,
and Broadway Cab, LLC,
fka TSB Acquisitions,
*Defendants-Respondents,*

*and*

TSB ACQUISITIONS,
dba Broadway Cab Co.,
BCI Successor Inc.,
*Defendants.*

Multnomah County Circuit Court
060201786; A133503

195 P3d 400

Philip M. Lebenbaum argued the cause for appellant. With him on the briefs was Hollander, Lebenbaum & Gannicott.

Lisa Lear argued the cause for respondent Essex Insurance Company. With her on the brief were Beth Cupani, R. Daniel Lindahl, Beth R. Skillern, and Bullivant Houser Bailey PC.

Thomas M. Christ argued the cause for respondent Broadway Cab, LLC. With him on the brief was Cosgrave Vergeer Kester LLC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals a judgment for defendants, assigning error to the grant of defendants' motions for summary judgment and to the denial of plaintiff's motion for summary judgment. Plaintiff, as personal representative for Grigory Rogozhnikov's estate, filed a declaratory judgment action seeking uninsured motorist (UM) benefits under an automobile insurance policy issued by defendant Essex Insurance Company (Essex), and under which defendant Broadway Cab, LLC (Broadway) remained self-insured for the first portion of coverage. On appeal, the parties raise three arguments about the application and meaning of terms in the relevant UM statute. Because we hold that the passenger who shot Rogozhnikov was not an "operator" of the cab under the UM statutes, we do not reach the other two arguments. We affirm.

The facts are undisputed. In the early morning of February 16, 2003, Grigory Rogozhnikov was driving his cab as an independent contractor for Broadway. He picked up a passenger, Barr, near the Justice Center in Portland and drove him to Barr's workplace in northeast Portland. Barr entered his workplace and returned to the cab with a bag. He got into the backseat of the cab and shot Rogozhnikov in the head. Rogozhnikov was able to get out of the cab, and Barr shot him again. Barr then drove off in Rogozhnikov's cab. Rogozhnikov died of the gunshot wounds. Barr pleaded guilty to several crimes arising from those events.

At the time of the shooting, Rogozhnikov was insured under an automobile policy that Essex had issued to Broadway. By agreement with Essex, Broadway was self-insured for the first $200,000 of any UM benefits that it owed, with Essex providing excess coverage. Plaintiff filed a declaratory judgment action seeking UM benefits under the Essex policy.

Each party moved for summary judgment, claiming, under the UM statutes, entitlement to judgment as a matter of law. The applicable UM statute provides:

"The insurer will pay all sums which the insured * * * shall be legally entitled to recover as general and special

damages from the *owner or operator* of an *uninsured vehicle* because of bodily injury sustained by the insured caused by accident and arising out of the *ownership, maintenance or use* of such uninsured vehicle."

ORS 742.504(1)(a) (2001) (emphasis added).[1]

The parties contested three issues at summary judgment: (1) whether Barr was an "operator" of the vehicle as required by the statute;[2] (2) whether Rogozhnikov's cab was an "uninsured vehicle" when "operated" by Barr; and (3) whether Rogozhnikov's death "ar[ose] out of the * * * use" of his cab. In order for plaintiff to be entitled to recover UM benefits under the statute, she had to establish that the answer to each of those questions was "yes."

The trial court granted summary judgment for defendants on the ground that the cab was not an uninsured motor vehicle because it was insured under a policy issued by Essex. Plaintiff appealed. On appeal, plaintiff assigns error to the grant of defendants' motions for summary judgment and to the denial of her cross-motion for summary judgment. Plaintiff renews the arguments that she made below on the three issues that the parties contested.

■ Viewing the record in the light most favorable to plaintiff, our task is to determine whether there is any genuine issue of material fact and whether defendants are entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Barber v. George*, 144 Or App 370, 372-73, 927 P2d 140 (1996). When there are cross-motions for summary judgment and the grant of one and denial of the other are assigned as error, both rulings are subject to review. *Farmers Ins. Exchange v. Crutchfield*, 200 Or App 146, 152-53, 113 P3d 972 (2005), *rev den*, 339 Or 609 (2005).

■ ■ On appeal, plaintiff argues that Barr became an "operator" of the cab when he put a gun to Rogozhnikov's

---

[1] ORS 742.504 has been amended a number of times since 2001. Because those amendments do not effect our analysis, we do not address them.

[2] The parties agree that Barr was not the "owner" of the cab and thus must be an "operator" for UM benefits to apply.

head, thereby becoming a carjacker and exercising constructive control over the vehicle by directing Rogozhnikov's actions.[3] Plaintiff frames the question as, "When does a carjacker become an 'operator'?" Defendants argue that Barr was not an "operator" because that term has been construed by the Supreme Court to be limited to a person in actual physical control of a vehicle, and Barr did not physically control the cab at the point at which he put the gun to Rogozhnikov's head and shot him. *See Schaffer v. Mill Owners Ins. Co.*, 242 Or 150, 153-55, 407 P2d 614 (1965).

Whether Barr was an "operator" of the cab is a question of statutory construction. The term "operator" was not defined in the UM statutes or the Motor Vehicle Code during the period applicable to this action. However, "operator" was defined in the Motor Vehicle Code when the UM statutes were enacted in 1967. *See* Or Laws 1967, ch 482, § 3(1)(a) (enacting the applicable UM statutes). *Former* ORS 483.008(2) (1967), *repealed by* Oregon Laws 1983, chapter 338, section 978, provided that, as used in the Motor Vehicle Code, " '[d]river' or 'operator' means any person, other than a chauffeur, who is in actual physical control of a vehicle upon the highways or streets of this state." Under that provision, "operator" was synonymous with "driver," and required "actual physical control" of a vehicle. While that definition of

---

[3] The parties dispute whether our task is to construe the policy terms or the terms of the applicable UM statute. The policy issued by Essex provides, in part, that "[w]e will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the *owner or driver* of an 'uninsured motor vehicle.' " (Emphasis added.) The applicable UM statute, ORS 742.504(1)(a) (2001), provides, in part, that "[t]he insurer will pay all sums which the insured * * * shall be legally entitled to recover as general and special damages from the *owner or operator* of an uninsured vehicle." (Emphasis added.) ORS 742.504(1) to (12) "set[s] out a comprehensive model UM/UIM policy." *Vega v. Farmers Ins. Co.*, 343 Or 291, 302, 918 P2d 95 (1996). Under the statute, "Every policy * * * shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy." ORS 742.504 (2001). Thus, plaintiff argues and Broadway concedes, that we should apply the statutory terms because "driver" is a narrower and therefore less favorable term than "operator." Essex argues that we should apply the policy terms, but that, at any rate, the result is the same regardless of which term we construe because, under *Schaffer v. Mill Owners Ins. Co.*, 242 Or 150, 407 P2d 614 (1965) (discussed below, 222 Or App at 570), "operator" is synonymous with "driver." Because the statutory term "operator" could be more favorable than the policy term "driver," we focus on the former in resolving this case.

"operator" does not apply to the UM statutes, it provides useful context, because the Motor Vehicle Code and the automobile insurance statutes both address the operation of motor vehicles. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (where the legislature uses the same term in related statutes, the court may infer that the term has the same meaning).

The term "operator" also was construed by the Oregon Supreme Court in *Schaffer*, 242 Or at 155, a case involving an automobile insurance policy that was decided two years before the legislature enacted the UM statutes. In *Schaffer*, a father drove a car to the coast with his 17-year-old son. The father became ill and told his son to drive. While the son was driving, the car collided with another car. That car's driver filed an action against the father, was awarded damages, and sought to collect those damages from the father's automobile insurer. The insurer denied coverage based on an exclusion in the insurance policy for "accidents which occur while any automobile is being operated by any male *operator* under 25 years of age." *Id*. at 152 (emphasis modified). "Operator" was not defined in the policy, and plaintiff argued that the father was an "operator" because, although he was ill in the backseat of the car, he was present in the car and had the right to control the actions of his son. The court rejected that argument and held that "operation" of a vehicle requires "actual physical control" of the vehicle's movements. *Id*. at 154-55. "When used in this context, we construe 'operator' to be synonymous with 'driver.' " *Id*. at 155. "In enacting subsequent legislation, the legislature is considered to be aware of th[e Supreme] [C]ourt's decisions." *State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984). Thus, it is reasonable to assume that the legislature was aware of the Supreme Court's construction of the term "operator" in an automobile insurance policy to be synonymous with driver, and to mean a person who has actual physical control of a vehicle, when it used that term in the UM statutes that it enacted two years after *Schaffer*.

That interpretation also is consistent with our previous understanding of the meaning of "operator" in an insurance policy. In *State Farm Mutual Auto Ins. Co. v. White*, 60

Or App 666, 669, 655 P2d 599 (1982), we construed a home-owner's insurance policy that excluded coverage for "a motor vehicle owned or *operated* by, rented or loaned to any insured." (Emphasis in original.) In that case, the driver was driving a car with three passengers. One of the passengers was in the backseat and, while the car was traveling at 55 miles per hour on Interstate 5, she reached between the driver and a passenger in the front seat and grabbed and yanked the steering wheel, and said, "Let's get crazy." The driver lost control of the car, which struck a median barrier and overturned. The driver and two other passengers brought claims against the backseat passenger, who then tendered the claims to her parents' homeowner's insurer. The insurer denied coverage based on the policy's motor vehicle exclusion, arguing that the passenger was "operating" the vehicle when she grabbed and yanked the steering wheel. In a declaratory judgment action that the insurer brought to determine its duty to defend the claims, we held that the pas-senger did not "operate" the vehicle but, rather, interfered with its operation. As we said in that case, "[t]he word 'oper-ator' in an insurance policy involving automobiles refers to the driver." *Id.* at 671 (citing *Schaffer*, 242 Or 150).

In light of the foregoing consistent understanding of the term "operator" in the context of automobile insurance and statutes addressing the operation of motor vehicles, we conclude that the term "operator" in ORS 742.504(1)(a) means a person who exercises actual physical control over a vehicle. Here, Barr was not an "operator," because he did not have actual physical control over the vehicle. Barr may have been trying to become an operator, or may have been in con-structive control of the vehicle while holding a gun to Rogozhnikov's head, but he was not in actual physical control of the vehicle when he shot Rogozhnikov. Hence, the trial court did not err in granting summary judgment for defen-dants because defendants were entitled to judgment as a matter of law on plaintiff's claim for UM benefits. Likewise, the court did not err in denying summary judgment for plaintiff.

Affirmed.