Submitted March 22, reversed November 7, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY MICHAEL HANSEN,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR080257; A143798

290 P3d 847

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

### NAKAMOTO, J.

Defendant was convicted of hindering prosecution, ORS 162.325, and challenges the trial court's denial of a motion for judgment of acquittal because the state did not prove the allegations of the indictment. The indictment alleged that defendant prevented the apprehension of a known felon, when the statute requires the state to prove that defendant prevented *anyone from performing an act which might aid in the apprehension* of a known felon. Defendant contends that the trial court should have granted his motion for a judgment of acquittal because of the variance between the indictment and evidence at trial.[1] For the following reasons, we reverse.

When reviewing a trial court's denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). The Yamhill County Sheriff's Office received a call that Shane Culp, for whom the police had a felony arrest warrant, was seen entering a house owned by Steven Hyder. Culp had a history of evading and committing violence against police. Hyder's house had been known to contain firearms. Deputies Brodeur, Donahoo, and Ramsey responded to the call and formulated a plan to apprehend Culp. Ramsey covered the back of the house that the deputies believed to be Hyder's while Brodeur and Donahoo approached the house at the front door. At first, Brodeur and Donahoo knocked on Hyder's neighbor's door and received no response. As the officers discussed whether they had the correct house, a man walked out of Hyder's house. Donahoo recognized the man as Culp. Culp yelled something, threw his hands in the air, and ran back inside the house. The officers went towards

---

[1] Defendant also assigns error to the trial court giving an instruction on an element not included in the indictment, an issue unpreserved for appeal, *State v. Alonzo*, 249 Or App 149, 150-51, 274 P3d 889, *rev den*, 352 Or 377 (2012), as well as to the court admitting into evidence statements defendant made to police and allowing the jury to convict on a nonunanimous verdict. In light of our disposition of defendant's first assignment of error, we decline to address his remaining assignments.

Hyder's house, and Donahoo yelled back asking Culp to come out and talk to them.

As the officers approached Hyder's door, defendant's girlfriend, Withnell, came out to meet them. Brodeur told Withnell that they were looking for Culp and had seen him walk inside. Withnell said Culp was not in the house. After Brodeur described what Culp looked like to Withnell, she said that she knows Culp, but he was not in the house. Brodeur then asked whether anybody else was in the house, and Withnell replied that defendant was in the house. Brodeur asked Withnell to tell defendant to come outside, and he did.

When both Withnell and defendant were on the porch, Brodeur told both of them that he saw Culp go into the house and asked them if they had seen Culp go inside the house. They both replied no and said that they were watching a movie in the living room. Brodeur told them that Culp had a felony warrant and that they would be hindering prosecution if they did not say he was inside. Donahoo also told them that they would be hindering prosecution if they denied that Culp was in the house. Again, defendant and Withnell said that Culp was not in the house. At some point, Sergeant Ludwig arrived and admonished defendant and Withnell for hindering prosecution if they denied that Culp was in the house. They both said that Culp was not inside.

Brodeur called for backup, and at least two additional officers and a canine unit arrived. Two officers and a police dog entered the house, found Culp hiding in the bedroom, and arrested him. The house's floor plan required Culp to pass through the living room, where defendant and Withnell were watching television, to get to the bedroom. Defendant and Withnell were arrested and charged with hindering prosecution.

The indictment alleged that defendant committed hindering prosecution.

"The defendants, on or about May 19, 2008, in Yamhill County, Oregon, did unlawfully, with intent to hinder the apprehension [of] Shane Culp, a person who had committed

a crime punishable as a felony, *prevent, by means of deception,* the *discovery or apprehension* of said Shane Culp; contrary to statute and against the peace and dignity of the State of Oregon."

(Emphasis added.) The text of the indictment differed from the statutory requirements of hindering prosecution under ORS 162.325. That statute provides, in relevant part:

"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension * * * of a person who has committed a crime punishable as a felony * * * the person:

"* * * * *

"(d) Prevents or obstructs, by means of * * * deception, *anyone from performing an act which might aid in the* discovery or apprehension of such person[.]"

ORS 162.325 (emphasis added). The indictment thus omitted the italicized portion of the statute defining the crime.

At trial, Brodeur and Donahoo testified to the facts stated above. When asked whether defendant's and Withnell's statements prevented officers from apprehending Culp, Brodeur testified that it did initially because "it would put doubt in our mind that who we actually saw[,] we saw." Because Brodeur had never seen Culp before, he had to reconcile what defendant said with Donahoo's identification of Culp. Brodeur had to confirm that the man Donahoo had seen run into the house was Culp. Donahoo testified that he had been "80 percent" certain that he saw Culp enter the house, and their deception prevented the officers from apprehending Culp. According to Brodeur, had defendant and Withnell been forthcoming and told the officers where Culp was in the house, or whether anybody else was in the house, they would not have delayed the process of apprehending Culp. Brodeur explained that officer safety was a concern, but gathering all the information that he needed made it a lot easier to safely enter the house.

After the state rested, defendant and Withnell moved for a judgment of acquittal, arguing that the state failed to prove that defendant had prevented and not delayed Culp's apprehension. The trial court denied defendant's

motion, and, ultimately, a jury convicted him of hindering prosecution.

On appeal, defendant argues that the trial court erred in denying his motion for a judgment of acquittal in two ways: there was either a material variance or a prejudicial variance between the indictment and the proof at trial. "It is a basic component of a defendant's fundamental right to due process that a court may not find him guilty of a crime for which he has not received notice or an opportunity to prepare a defense." *State v. Barrie*, 227 Or App 378, 381, 206 P3d 256 (2009).

The indictment alleged that defendant "prevent[ed], by means of deception, the discovery or apprehension of said Shane Culp." But in defendant's view, the state merely proved at trial, consistently with ORS 162.325 and the state's requested jury instruction, which the trial court gave, that defendant "prevent[ed], by means of * * * deception, *anyone from performing an act which might aid in* the discovery or apprehension of [a person who has committed a felony.]" (Emphasis added.) That variance, in defendant's view, was both material and prejudiced him because the state was allowed to convict him on a different theory of criminal liability than the one charged. In the alternative, defendant asserts that the state did not offer sufficient evidence that defendant prevented the discovery or apprehension of Culp, as alleged in the indictment.

The state does not address defendant's variance argument, at least not directly. Rather, it responds that, viewed in the light most favorable to the state, the evidence was sufficient for the jury to find, consistently with the allegations in the indictment, that defendant's deception delayed the police from entering the house, thereby preventing—albeit temporarily—the apprehension of Culp. We agree with defendant that he suffered prejudice due to the variance and do not reach defendant's argument that the variance was material or his alternative argument that the evidence was insufficient for conviction.

Whether a variance between the allegation in the charging instrument and the state's evidence at trial warrants reversal depends on whether that variance was

either material or prejudicial. *State v. Newman*, 179 Or App 1, 7, 39 P3d 874 (2002). As to prejudice, we must determine whether "on the facts of the particular case, the defendant had suffered prejudice to his defense by the variance between the allegation and the proof." *Id.* (citing *State v. Long*, 320 Or 361, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995)) (internal quotation marks and footnote omitted). If the answer to that question is affirmative, the motion for judgment of acquittal should be granted. *Newman*, 179 Or App at 11; *accord State v. Boitz*, 236 Or App 350, 356, 236 P3d 766 (2010). Whether a variance is *prejudicial* depends on the specific *theories* under which a case is argued. *Boitz*, 236 Or App at 356 (emphasis in original). If the defendant would need to develop a different argument to contend with the variance, the defendant would be prejudiced. *Id.*

Here, the variance altered defendant's argument at trial. In at least partial accordance with ORS 162.325(1)(d), the indictment alleged that defendant did "prevent by means of deception, the discovery or apprehension of \* \* \* Culp." The Oregon Revised Statutes do not define "prevent." Generally, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The common meaning of "prevent" is

> "**3:** to deprive of power or hope of acting, operating, or succeeding in a purpose : Frustrate, Circumvent \* \* \* **4:** to keep from happening or existing esp. by precautionary measures : hinder the progress, appearance, or fulfillment of : make impossible through advance provisions \* \* \* **5:** to hold or keep back (one about to act) : Hinder, Stop \* \* \* often used with *from*."

*Webster's Third New Int'l Dictionary* 1798 (unabridged ed 2002) (emphasis in original). "Prevent" implies that a person does some act to stop an occurrence from happening.

Although the state argues that "prevent" as used in the statute and in the indictment means "temporarily stop," that proffered definition does not comport with the text of ORS 162.325(1)(d), which makes it a crime to "prevent *or obstruct*" someone from performing an act that might aid in the apprehension of a felon. (Emphasis added.) The dictionary

definition of "obstruct" suggests a meaning different from "prevent"—when the latter term is understood as stopping an occurrence from happening. "Obstruct" commonly means

> "**1:** to block up : stop up or close up : place an obstacle in or fill with obstacles or impediments to passing \*\*\* **2:** to be or come in the way of : hinder from passing, action, or operation : IMPEDE, RETARD \*\*\*."

*Webster's* at 1559 (emphasis in original). That dictionary definition is consistent with the way "obstruct" was used in other parts of the criminal code. *See Rogozhnikov v. Essex Ins. Co.*, 222 Or App 565, 569, 195 P3d 400 (2008) (definition of the same term from other statutes provides useful context). For example, ORS 162.235, which was enacted at the same time as ORS 162.325 as part of the Revised Criminal Code in 1971, makes it a crime to obstruct governmental administration. In the commentary to the Proposed Oregon Criminal Code, the Criminal Law Revision Commission noted that "obstruct" is used in the context of its accepted judicial meaning:

> "'Obstruction: A term derived from the Latin verb "obstruere", and variously defined as meaning a barrier, hindrance, impediment, or obstacle. An obstruction is that which impedes progress, and it has been defined as a blocking up; filling with obstacles or impediments. Obstruction does not necessarily imply prevention.'"

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 198, 199 (July 1970) (citation omitted). "Obstruct" thus implies making someone's action more difficult, as opposed to stopping the action completely. By using both "prevent" *and* "obstruct," the legislature signaled its intent to capture two different concepts—impeding progress and stopping it completely.

The state's contention that the term "prevent" means "temporarily stop" would make those terms synonymous, but the state has not offered, and we have not found, any legislative history to suggest that the legislature intended redundancy in the statute. Although we recognize that "the

fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal," *State v. Cloutier*, 351 Or 68, 97, 261 P3d 1234 (2011), courts normally seek to avoid an interpretation of a statute that results in a redundancy. *State v. Kellar*, 349 Or 626, 636, 247 P3d 1232 (2011).

Accordingly, under the allegation in the indictment, the state had to prove that defendant, by deception, did stop Culp's discovery or apprehension. Stated another way, based on the indictment, defendant could successfully defend the case if the state failed to prove that defendant's deceptive statements stopped Culp from being apprehended or discovered.

In contrast, ORS 162.325 makes it a crime for a person to prevent, by means of deception, *anyone from performing an act which might aid in the* discovery or apprehension of a felon. The italicized phrase, absent from the indictment but introduced to the jury through an instruction, made it easier for the state to convict defendant. Rather than being required to prove that defendant's action stopped Culp from being apprehended, the state needed only to prove that defendant's actions stopped officers from performing some act that *might aid* in Culp's apprehension. Such an act, which might aid an officer, need not lead directly to Culp's apprehension; the state only had to show that the act *might aid* in Culp's apprehension.

That variance makes evident that defendant's theory of the case would have been different had he been tried under the theory in the indictment.[2] Had the state been required to establish that defendant stopped Culp from being apprehended, defendant would have moved for a judgment of acquittal and, based on a failure of proof, should have been acquitted, given that Culp was in due course apprehended, after a canine unit arrived and a dog identified the bedroom

---

[2] In its briefing on defendant's unpreserved assignment that the jury instruction on the elements of the hindering prosecution crime was erroneous, the state acknowledges the difference, noting that the instruction was erroneous because the court added a theory available under the statute that was not alleged in the indictment, namely, "the court instructed the jury that it need only find that defendant prevented the performance of an act that might have aided in Culp's apprehension."

in Hyder's house where Culp was hiding. Instead—in the face of evidence that he had lied about Culp being in the house, which stopped officers from immediately entering the house and apprehending Culp—defendant was forced to argue that it was not his conduct that held up the officers but, rather, it was an independent police decision based on officer-safety concerns. Accordingly, we conclude that defendant was prejudiced when the indictment excluded the phrase "anyone from performing an act which might aid in," but defendant was tried on that theory. Therefore, the trial court erred in denying defendant's motion for a judgment of acquittal.[3]

Reversed.

---

[3] In this case, the state did not argue to, and the court did not instruct, the jury that defendant could be convicted based on any theory other than the one giving rise to defendant's conviction. The state does not suggest, in the alternative, that we should remand to allow the state to retry defendant, and we decline to do so. *Cf. State v. Burgess*, 240 Or App 641, 251 P3d 765 (2011), *aff'd*, 352 Or 499, 287 P3d 1093 (2012). In *Burgess*, the state charged the defendant with first-degree assault, arguing at trial that the defendant aided and abetted his codefendant's assault on the victim. We reversed the defendant's first-degree assault conviction because there was insufficient evidence of accomplice liability, though there was arguably sufficient evidence to support the conviction as a principal. *Id.* at 654. We remanded for further proceedings on the lesser charges of second- and fourth-degree assault given that the state had argued and the trial court had instructed the jury that, if the jury acquitted defendant of first-degree assault, it could nevertheless convict him of either second- or fourth-degree assault. *Id.* at 646 n 5.