DUNCAN, J. pro tempore.
*620 In this criminal case, defendant appeals the trial court's judgment convicting him of, among other crimes, felon in possession of a firearm (Count 5), ORS 166.270. On appeal, defendant raises four assignments of error. We reject his first and second assignments without discussion, and we write only to address his third and fourth assignments, in which he asserts that the trial court erred in allowing the state to proceed on a different theory on Count 5 than the theory alleged in the indictment. For the reasons explained below, we agree with that assertion, reverse defendant's conviction on Count 5, and otherwise affirm.[1]
I. HISTORICAL AND PROCEDURAL FACTS
In connection with a drug investigation, law enforcement officers executed a search warrant at defendant's house at around 8:45 a.m., on January 18, 2013. The officers observed a security camera near the front door and a "screen monitoring system" mounted on the living room wall, next to the entryway. The officers found six persons in the house: defendant and two women, Reed and Mahein, in the living room; Reed's four-year-old child, who was asleep in a chair in a bedroom adjacent to the living room; and two adults in the second story of the house. The officers also found an adult in a trailer behind the house.
After the police entered the house, they gathered all of the adults in the living room, where an officer read them their Miranda rights and the search warrant. The warrant specified that the search was for evidence of unlawful delivery of methamphetamine and unlawful possession of methamphetamine and that defendant was the person suspected of the crimes.
After the search warrant was read, an officer interviewed defendant in the bedroom where the child was sleeping, away from the other adults in the living room. When the officer asked defendant if there were any drugs in the *621 house, defendant said that there was a black bag in the living room with methamphetamine inside of it. The officer led defendant back to the living room, and defendant identified the bag, which was near where defendant had been sitting when the *277 officers entered the house. Inside the black bag, an officer found a "freezer-style" bag containing a large quantity of methamphetamine and a baggie containing a smaller quantity of methamphetamine. Also inside the black bag, the officer found two scales, packaging materials, and a lock box containing vehicle titles and bills of sale and more than $7,000 in cash. The cash included six $1,000 bundles and two $500 bundles. At defendant's trial, an officer testified that a "user amount" of methamphetamine is usually one half of a gram or a gram. According to the state's evidence, the amount of methamphetamine in the freezer-style bag could sell for between $12,360 and $15,540, if sold in one-ounce units, or between $23,363 and $29,204, if sold in one-gram units.
Also in the living room, the police found two firearms. One was next to defendant's wallet and near where defendant had been sitting. The other was in a toolbox.
In defendant's bedroom, the police found a "large garbage-style bag" containing 28.78 grams of psilocybin mushrooms on defendant's bed. According to one of the officers, the amount of psilocybin mushrooms was not a "user amount." In defendant's dresser, the police also found a smaller bag of psilocybin mushrooms and a jewelry box containing a small piece of paper with letters and numbers on it, and an officer testified that the numbers were consistent with the sale prices for methamphetamine.
Based on the evidence discovered during the execution of the search warrant, the state charged defendant with delivery and possession of methamphetamine, as commercial drug offenses (Counts 1 and 2); delivery and possession of a Schedule I controlled substance (psilocybin), as commercial drug offenses (Counts 3 and 4); felon in possession of a firearm (Count 5); endangering the welfare of a minor (Reed's child) (Count 6); and first-degree child neglect (of Reed's child, on an aiding-or-abetting theory) (Count 7).
*622 Prior to trial, defendant filed a motion in limine to limit the state's evidence regarding the felon-in-possession charge. That charge alleged that, on or about January 18, 2013, defendant "did unlawfully and knowingly own, possess or use a firearm, * * * having been previously convicted of a felony * * * within the past 15 years [.]" (Emphasis added.) ORS 166.270 defines the crime of felon in possession of a firearm and provides, in part:
"(1) Any person who has been convicted of a felony * * * who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm.
"* * * * *
"(4) Subsection (1) of this section does not apply to any person who has been:
"(a) Convicted of only one felony * * * and who has been discharged from imprisonment, parole or probation for said offense for a period of 15 years prior to the date of alleged violation of subsection (1) of this section[.]"
(Emphases added.) Thus, as relevant here, the state may prove that ORS 166.270 applies by proving that the person was convicted of a felony (or was in prison or on parole or probation for that felony) within the preceding 15 years; alternatively, the state may prove that ORS 166.270 applies by proving that the person was convicted of more than one felony. In this case, the state provided defendant with a criminal history record in discovery. The record reflected that defendant had been convicted of possession of a controlled substance, as a felony, in 2005 (approximately eight years before the charged felon-in-possession offense). The record was inaccurate, because the conviction was not for a felony; the offense had been treated as a misdemeanor at the time of sentencing. The record also reflected that defendant had been convicted of delivery and possession of controlled substances in 1989 (approximately 30 years before the charged felon-in-possession offense). Shortly before trial, the state provided defendant copies of judgments of conviction, including one from 2005 and one from 1989. In response, defendant moved to exclude evidence of the 2005 conviction, on the ground that it was not for a felony, because the offense *623 was treated as a misdemeanor at the time of sentencing. ORS 166.270(3)(a) (providing that a conviction "shall not be deemed a conviction of a *278 felony if * * * [t]he court declared the conviction to be a misdemeanor at the time of judgment"). The state did not dispute that, and the trial court excluded evidence of the 2005 conviction as irrelevant.
Defendant also moved to exclude evidence of the 1989 convictions on the ground that, although the convictions were for felonies, they had not occurred "within the past 15 years" as alleged in the indictment. Defendant argued that the 1989 convictions were "not relevant" and that the "indictment [was] controlling even if there [was] an alternate theory of felon in possession that the State could have pursued." He further argued that admitting the irrelevant convictions would "taint the jury."
The state did not dispute that the 1989 convictions were outside the time period alleged in the indictment, and it conceded that it could not prove that defendant had been convicted of a felony "within the past 15 years" as it had alleged. But the state contended that the felon-in-possession count stated a crime, even without the phrase "within the past 15 years," and therefore, the phrase was mere surplusage and the state could proceed on a theory that was not based on defendant having a felony conviction within 15 years of the commission of the charged felon-in-possession crime.
The trial court questioned the state about defendant's argument that the state was bound by the allegation in the indictment, noting that the indictment alleged that he had been convicted of a felony within the past 15 years, not that he had been convicted of two felonies. The trial court further questioned the state about whether it had presented evidence of the 1989 convictions to the grand jury, and if it had not, whether it could proceed on a theory based on those convictions. In response, the prosecutor contended that the trial court could not consider what evidence had been presented to the grand jury:
"[THE COURT]: [H]ere's my concern. * * * [A]ssuming you got an indictment from the grand jury, grand jury indicted him for being convicted in the last 15 years.
*624 "[STATE]: No. The-
"THE COURT: What do you mean, no?
"[STATE]: We don't know what-
"THE COURT: The grand jury signed this. That's what it says.
"[STATE]: Yeah. But we don't know what-as far as that. And that doesn't mean that that's the only conviction that a grand jury was seeing. That's one of the things that they would have believed and certainly could have believed, is that also within the last 15 years he had a felony conviction within 15 years.
"He doesn't have a felony conviction within 15 years. That doesn't mean that that's the only basis to charge. And that that's not included. That the other convictions are not included within the-within the text of that statute.
"* * * * *
"THE COURT: My concern is the grand jury said, you know, this within the 15 years modifies the conviction. So I have no idea how to know whether the grand jury ever looked at any other convictions.
"[STATE]: No. But the-exactly. And that's where you can't go there. * * *
"THE COURT: Yeah, but how do I know that the grand jury wasn't made aware of that?
"[STATE]: How do you know that they weren't? * * * But what they did is they've stated-this charging instrument states * * * this crime. The finding that he was convicted within 15 years of [a] felony doesn't mean that he was not convicted of felonies in addition to that.
"THE COURT: * * * My concern is as I read this, what it says is, [t]he grand jury previously convicted him [sic ] of a felony under the laws of the State of Oregon, another state, or the United States within the past 15 years.
"All it shows me is that they considered that he had been convicted within the past 15 years. It doesn't show me that they considered that he had been convicted of anything else."
*625 After that colloquy, the trial court noted that defendant's argument was akin to a motion for judgment of acquittal, and defendant *279 replied that he intended to move for a judgment of acquittal on the felon-in-possession charge at trial, but he was moving to exclude the evidence of the 1989 convictions before trial in order to protect against "the potential prejudice of having [the] convictions[,] which wouldn't otherwise be admissible [,] * * * taint the jury."
The trial court took the matter under advisement. At a recess during the subsequent jury trial, the parties reiterated their arguments about the variance. Defendant conceded that, if the phrase "within the past 15 years" was stricken, the felon-in-possession count would still state a crime, but he argued that "the state [had] elected, by indicting this matter * * * to pursue a theory that [the requisite felony conviction] occurred within the last 15 years and that they're bound by that election." Defendant explained that the variance between the state's pleading and its intended proof would prejudice his defense "in terms of the arguments that [he was] prepared to make to the jury about whether there [was] a felony conviction within the last 15 years."
Ultimately, the trial court denied defendant's motion in limine , agreeing with the state that the phrase "within the past 15 years" was not a material element of the felon-in-possession charge and that defendant would not be prejudiced if the state was allowed to prove its case using the 1989 convictions. In its case-in-chief, the state presented evidence of the 1989 convictions.
At the conclusion of the state's case-in-chief, defendant moved for a judgment of acquittal on, inter alia , the felon-in-possession count. He renewed his argument that the state was bound by the theory it alleged in the indictment and, because it had failed to present any evidence that he had been convicted of a felony "within the past 15 years" as it had alleged, he was entitled to a judgment of acquittal. The trial court denied defendant's motion, and the case was submitted to the jury, which found defendant guilty on all counts.
*626 II. ANALYSIS
In defendant's third assignment of error, he asserts that the trial court erred in denying his motion in limine to exclude evidence of the 1989 convictions on the ground that they were irrelevant because they were not within 15 years of the charged felon-in-possession crime. In his fourth assignment of error, he asserts that the trial court erred by denying his motion for a judgment of acquittal on the felon-in-possession count because the state failed to present any evidence that he been convicted of a felony "within the past 15 years," as it had alleged.
In support of both his third and fourth assignments of error, defendant argues, "The state elected to charge defendant with a specific theory of felon in possession of a firearm. It presented the grand jury with an indictment charging only that theory. However, at trial, it abandoned that theory and attempted to establish a wholly different theory of the offense." According to defendant, the variance between the state's pleading and proof was prejudicial and violated his state constitutional right to be charged by a grand jury. Because the state did not present any evidence that defendant had a felony conviction "within the past 15 years" and because the variance between the state's pleading and proof was impermissible, defendant argues, "[t]he trial court should have entered a judgment of acquittal on Count 5," and, on appeal, we should reverse defendant's conviction on that count. In addition, defendant further argues, because the variance was impermissible, the trial court should have excluded evidence of the 1989 convictions, and, because its failure to do so "harmed defendant" on all of the other counts, we should reverse and remand defendant's convictions on those counts.
Defendant's arguments that the trial court erred by denying his motion in limine to exclude evidence regarding the 1989 convictions and by denying his motion for a judgment of acquittal on the felon-in-possession charge are based on his argument that the state's pleading varied from its proof. Whether a variance between the state's pleading and proof is permissible is a question of law, which we review for *627 legal error. State v. Hansen , 253 Or.App. 407, 408, 411-12, 290 P.3d 847 (2012). *280 When determining whether a variance between an allegation in an indictment and the state's proof at trial is permissible, we consider two factors: whether the variance concerns a material element and whether the variance prejudiced the defendant:
"First, a court examines whether the variance between an allegation and proof concerns an allegation of a material element of the crime. Second, if the allegation does not concern a material element of the crime, the court determines whether, on the facts of the particular case, the defendant suffered prejudice to his defense by the variance between the allegation and the proof."
State v. Newman , 179 Or.App. 1, 7, 39 P.3d 874 (2002) (internal citations and quotation marks omitted). Thus, if a variance concerns a material element or prejudices the defendant, it is impermissible. See, e.g. , State v. Boitz , 236 Or.App. 350, 356, 236 P.3d 766 (2010) (declining to determine whether a variance concerned a material element because, even if it did not, the variance was impermissible because it was prejudicial).
In this case, on appeal, defendant argues both that the variance concerned a material element and that it prejudiced defendant. As the state points out, however, defendant did not preserve his argument that the variance concerned a material element. The test for whether a variance concerns a material element depends on whether "the indictment states an offense without [the] allegation[,]" State v. Kowalskij , 253 Or.App. 669, 674, 291 P.3d 802 (2012), rev. den. , 353 Or. 748, 304 P.3d 39 (2013), and, in the trial court, defendant conceded that, if the phrase "within the past 15 years" were stricken from Count 5, the count would still state an offense. Consequently, we do not address defendant's contrary argument, made for the first time on appeal, and we consider only defendant's argument that the variance was prejudicial.
"Whether a variance is prejudicial depends on the specific theories under which a case is argued."
*628 Boitz , 236 Or. App. at 356, 236 P.3d 766 (emphases in original). Where a variance "would require a defendant to develop a different argument," the variance "is prejudicial to [the] defendant." Id . Both Boitz and Hansen , 253 Or.App. 407, 290 P.3d 847, provide examples of impermissible variances.
In Hansen , the state charged the defendant with hindering prosecution, ORS 162.325. The indictment alleged that the defendant prevented, by means of deception, the apprehension of a known felon, Culp, but the state proceeded on a theory, consistent with the language of ORS 162.325, that the defendant prevented, by means of deception, one or more officers from performing an act which might have aided in the apprehension of Culp. Id. at 411, 290 P.3d 847. At trial, the state presented evidence that police officers saw Culp enter a house and, when the defendant came out of the house and was questioned by the officers, the defendant repeatedly denied that Culp was in the house. Nevertheless, because one of the officers had recognized Culp, the officers called for backup, and when additional officers arrived, they entered the house and apprehended Culp. At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal, arguing that the state had failed to prove that he "had prevented and not delayed" Culp's apprehension. Id . at 410, 290 P.3d 847. The trial court denied the defendant's motion, and, on appeal, we reversed, holding that the variance between the state's pleading and its proof prejudiced the defendant. Id . at 414-15, 290 P.3d 847.
We explained that the hindering prosecution statute, ORS 163.325, uses both the term "prevent" and the term "obstruct," and that, through the inclusion of both terms, "the legislature signaled its intent to capture two different concepts-impeding progress and stopping it completely." Id. at 413, 290 P.3d 847. Therefore, "under the allegation in the indictment, the state had to prove that [the] defendant * * * did stop Culp's apprehension." Id. at 414, 290 P.3d 847. Or, stated differently, "based on the indictment, [the] defendant could successfully defend the case if the state failed to prove that [the] defendant's deceptive statements stopped [the felon] from being apprehended or discovered." Id. Because the state's trial theory eliminated that defense, we held that the variance *281 *629 between the state's pleading and its proof was prejudicial. We explained that the
"defendant's theory of the case would have been different had he been tried under the theory in the indictment. Had the state been required to establish that defendant stopped Culp from being apprehended, defendant would have moved for a judgment of acquittal, and, based on a failure of proof, should have been acquitted, given that Culp was in due course apprehended * * *. Instead-in the face of evidence that he had lied about Culp being in the house, which stopped officers from immediately entering the house and apprehending Culp-defendant was forced to argue that it was not his conduct that held up the officers but, rather, it was an independent police decision based on officer-safety concerns."
Id. at 414-15, 290 P.3d 847 (footnote omitted). Therefore, we concluded that the defendant was prejudiced by the variance between the state's pleading and its proof, and the trial court erred in denying his motion for a judgment of acquittal. Id .
Similarly, in Boitz , 236 Or.App. 350, 236 P.3d 766, we held that, where the state had alleged, as a sentence enhancement fact, that the defendant had been on "release status from other pending charges" when he committed the crime for which he was being sentenced, the trial court erred in finding the enhancement fact based on evidence that the defendant was "on probation, out in the community and had these probations still in existence or still pending." Id. at 352-53, 236 P.3d 766. We rejected the state's argument that "the portion of the allegation that defendant was on release from 'pending criminal charges' was mere surplusage and that any variance from the exact words contained in the notice was permissible." Id . at 354-56, 236 P.3d 766. We held that the variance was impermissible because the defendant's defense was that
"he did not commit this offense while criminal charges were pending. Accordingly, because defendant believed that he could defeat the * * * enhancement fact on that theory, the amendment of the notice to excise that phrase would have required defendant to develop a different theory to refute that enhancement fact. Thus, such an amendment would have been prejudicial in this case."
Id. at 356, 236 P.3d 766 (emphasis in original).
*630 In this case, as in Hansen and Boitz , the variance between the state's pleading and its proof was impermissible because it required defendant to defend against a different theory than that specified in the indictment. Defendant's defense, based on the language of the indictment, was that he did not have, as alleged, a felony conviction "within the past 15 years," and he moved for a judgment of acquittal based on the state's failure to prove that allegation. The variance deprived defendant of that defense.
The state argues that the change in its theory was permissible under State v. Pachmayr , 344 Or. 482, 185 P.3d 1103 (2008). According to the state, the phrase "within the past 15 years" was mere surplusage and the trial court could allow the state to amend the indictment to delete the phrase "to correct a defect in the form of the indictment." To the extent that Pachmayr applies in this case, it does not aid the state. Pachmayr concerns the state constitutional limits on the amendment of grand jury indictments. Article VII (Amended), section 5, of the Oregon Constitution provides that "a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury " and that "[t]he district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form ." (Emphases added.) Thus, an indictment can be amended to correct a defect in form, but not a defect in substance. State v. Wimber , 315 Or. 103, 113-14, 843 P.2d 424 (1992)
When determining whether an amendment to an indictment is permissible, we are to be guided by the " 'constitutional purposes of requiring an indictment by a grand jury.' " Pachmayr , 344 Or. at 490, 185 P.3d 1103 (quoting Wimber , 315 Or. at 115, 843 P.2d 424 ). Those purposes include protecting "the right of the grand jury, not the *282 prosecutor, 'to determine whether a particular charge should be brought' " and ensuring " 'that the charge presented against a defendant was based on facts found by the grand jury.' " State v. Long , 320 Or. 361, 370, 885 P.2d 696 (1994) (quoting Wimber , 315 Or. at 116, 843 P.2d 424 (Unis, J., dissenting)). When the state seeks to amend an indictment, it bears the burden of proving that the amendment is consistent with the grand jury's findings. Long , 320 Or. at 370, 885 P.2d 696. *631 Thus, in Long , the court held that the state's amendment to correct a date in an indictment was permissible because the state presented evidence, which the trial court credited, that "the date alleged in the indictment had been mistyped and that the actual date testified to by the witnesses before the grand jury was the same as the date proved at trial." Id . Thus, the court was able to conclude that the case was not a "prosecution for an offense other than that the grand jury had in mind." Id. (internal quotation marks omitted). "Rather, the amendment here was for the express purpose of prosecuting the exact crime that the grand jury had in mind." Id . at 370-71, 885 P.2d 696 (internal quotation marks omitted). Consequently, the state had carried its burden of proving that the amendment "did not serve to amend the substantive decision of the grand jury." Id . at 371, 885 P.2d 696.
Similarly, in Pachmayr , 344 Or. 482, 185 P.3d 1103, the court approved the amendment of an indictment that changed an allegation of assault with a "deadly" weapon to assault with a "dangerous" weapon, because the record established that the state's theory from the outset of the case was that the weapon was a car; indeed, the indictment specified so. Id . at 493, 185 P.3d 1103. The court explained, "Because the original indictment alleged that defendant used the car under circumstances that rendered it capable of causing injury, it already charged the crime of assault with a dangerous weapon." Id . The court further explained that it was "satisfied that, in this case, the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based." Id . at 495, 185 P.3d 1103. The court stated:
"In this case we know-without speculating-that the grand jury, by signing the indictment on [the challenged count] certified that it found sufficient evidence to charge defendant with driving a car-an instrument capable of causing death or serious injury-recklessly, 'under circumstances manifesting extreme indifference to the value of human life.' In doing so, the grand jury necessarily certified that it found sufficient evidence to charge defendant with assault with a dangerous weapon."
Id.
This case differs from Pachmayr and Long , because in this case the state did not carry its burden of proving *632 that the factual theory upon which the grand jury based its indictment was the same as that upon which the state tried its case. The trial court's concerns about the difference between the grand jury's indictment and the state's trial theory were well-founded. The indictment reflects that the grand jury indicted defendant based on the theory that he had a prior felony conviction "within the past 15 years." The state did not establish that the grand jury was presented with evidence of any other prior felony convictions. Therefore, the state failed to carry its burden of proving that the grand jury found the facts upon which the state tried its case. Consequently, the trial court should have both excluded the evidence of the 1989 convictions as irrelevant and granted defendant's motion for judgment of acquittal on the felon-in-possession charge.
Because the trial court erred in denying defendant's motion to exclude evidence of the 1989 convictions, the final question we must resolve is whether the admission of the evidence was harmless as to the remaining counts. Evidentiary error is not presumed to be prejudicial, and the party seeking reversal based on such an error bears the burden of proving that the error was prejudicial, that is, that it was not "harmless." OEC 103(1) ; State v. Hudson , 279 Or.App. 543, 554-55, 380 P.3d 1025 (2016). An evidentiary error is harmless if *283 there is "little likelihood that the error affected the jury's verdict." State v. Davis , 336 Or. 19, 32, 77, 77 P.3d 1111 P.3 1111 (2003). In this case, defendant argues that the admission of the evidence of the 1989 convictions was not harmless because the jury may have used the evidence to convict him based on his character. In light of the particular facts of this case, we disagree. Given the overwhelming evidence of the current drug offenses, there is little likelihood that defendant's prior convictions factored into the jury's verdict.
Conviction on Count 5 reversed; remanded for resentencing; otherwise affirmed.

In addition to the assignments of error raised through counsel, defendant raises an additional assignment of error pro se ; we reject that assignment without discussion.