566 February 7, 2024 No. 73

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE WILLIAM BRYANT,
*Defendant-Appellant.*

Washington County Circuit Court
21CR12260; A176017

Ramón A. Pagán, Judge.

Argued and submitted December 20, 2022.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Conviction on Count 1 reversed; otherwise affirmed.

**POWERS, J.**

In this criminal proceeding, defendant challenges his conviction for one count of hindering prosecution, ORS 162.325, arising out of his actions when law enforcement arrested his friend on an outstanding warrant. We must decide what "force" means for purposes of the hindering prosecution statute when defendant prevented or obstructed officers in their attempts to arrest his friend. More specifically, in a single assignment of error, defendant asserts that the trial court erred in concluding that he prevented or obstructed the officers from arresting his friend "by means of force." As explained below, we conclude that, based on the proper construction of the statute, there was insufficient evidence to support the trial court's determination that defendant used force. Accordingly, we reverse defendant's conviction and affirm the dismissal of an unrelated charge.

When a defendant challenges the legal sufficiency of the state's evidence and the challenge depends on the meaning of the statute defining the offense, we review the trial court's interpretation and construction for legal error. *State v. Holsclaw*, 286 Or App 790, 792, 401 P3d 262, *rev den*, 362 Or 175 (2017). After so doing, we then view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Id.* Accordingly, we begin by describing the facts under our standard of review.

On an early March evening, Officers Collins and Bunday arrived at a park in downtown Hillsboro to arrest Salah on an outstanding felony warrant. Defendant was at the park with Salah. As Collins approached, Salah began walking away, and defendant walked toward Collins briefly blocking the officer's path. Salah continued walking away from Collins, who called out, "Stop. You have a felony warrant. Stop now." Ultimately, Salah ended up with his back against the wall of a storefront with defendant standing with his back to Salah in between Salah and the officers. The officers repeatedly told defendant that he needed to move or they were going to take him to jail. Defendant maintained his ground, standing between Salah and the officers with his arms outstretched, moving back and forth

to keep Salah against the wall and to maintain a barrier between Salah and the officers. The officers testified that defendant's acts impeded and slowed down their efforts to arrest Salah because defendant was "physically blocking" Salah. The brief incident was captured on the officers' body cameras, and the videos were entered into evidence as a single exhibit during the bench trial. The following screenshot from the body-camera footage illustrates defendant's actions that evening:



After more officers arrived at the scene, Collins shoved defendant toward Bunday, which allowed Bunday to pull defendant by the arm away from Salah. The officers then arrested Salah and defendant without further incident. The time between when the first officer arrived at the scene and when defendant was pulled away from Salah was about two minutes.

Defendant was charged with hindering prosecution under ORS 162.325(1)(d), the text of which we set out in full below, and another charge that was later dismissed.[1] The indictment provided, in part, that "defendant *** did unlawfully, with intent to hinder the apprehension, prosecution, conviction or punishment of" Salah, a person who

---

[1] Defendant was charged with one count of hindering prosecution (Count 1) and one count of criminal trespass in the second degree (Count 2). The trial court dismissed Count 2 on the state's motion before trial, and that dismissal was later incorporated into the judgment.

committed a felony, "prevent or obstruct a person by means of force from performing an act which *** might have aided in the apprehension of" Salah. Defendant waived his right to a jury trial, and the case proceeded to a trial before the court.

During the bench trial, the trial court heard testimony from Officers Collins, Bunday, and Shrestha and received into evidence a video exhibit of the officers' body camera footage. Ultimately, the trial court concluded that the state presented sufficient evidence that defendant committed hindering prosecution "by means of force." Specifically, focusing on the period of time when defendant was in between the officers and Salah, the court explained:

> "So then by means of force. He—is it—I think there's an argument to be made that him simply move—running and putting himself in between the officers and Mr. Salah could be considered the force, but I don't need to use that. I think that's—I think the Court of Appeals could clarify that.

> "But [it] is when he starts hemming him in. At that point, he's using his physical force to maintain. It is his use of force at that point in his maintaining a barrier between himself and law enforcement and Mr. Salah.

> "At that point, he is using more than just kind of standing there, because if—had he—and here's the thing.

> "Had he just stood there and not listened to them and done nothing else, he'd be interfering with a peace officer.

> "But instead, he actually started taking physical actions to make sure that he was in between the officers at all time[s], and I think at that point, he has 'forced himself in between them.'

> "And I can think of other kind of similar situations where, again, it's just a person kind of putting their body and using the force of their body to come in between an officer and a person being arrested, and that's what happened here."

Defendant timely appeals his conviction, challenging the trial court's interpretation of the hindering prosecution statute.

On appeal, the issue is narrow, focusing on an issue of statutory construction. That is, the parties focus on the meaning of the phrase "by means of force" for purposes of the hindering prosecution statute and whether there is sufficient evidence in the record to meet that requirement. Defendant argues that the word "force" should be defined as "power, violence, compulsion, or constraint exerted upon or against a person or thing," and that it should not include the *de minimis* physical interference that a person uses to stand upright or move from side to side. The state remonstrates that "force" should be defined as "any affirmative physical act" that impedes or stops the performance of an act that might aid in the apprehension of a felon. Thus, under the state's interpretation, defendant's act of creating a barrier between Salah and the officers was sufficient to constitute force.

In advancing their differing interpretations, the parties' arguments implicitly acknowledge that the trial court's conclusion was unclear as to (1) whether defendant used force against the officers or Salah and (2) whether defendant's acts prevented or obstructed the officers from arresting Salah or prevented or obstructed Salah from aiding in his own apprehension. They further agree that we need not resolve that ambiguity because accepting either of their respective proposed constructions of the phrase "by means of force" would result in that party prevailing under any theory. Thus, we turn to whether defendant's act of holding his outstretched arms while moving back and forth when standing in between Salah and the officers constituted "force" within the context of ORS 162.325(1)(d). To do so, we turn to the familiar method of statutory interpretation set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to ascertain the legislature's intent.

We begin by considering the text of the statute giving "careful attention to the exact wording of the statute" because "only that wording received the consideration and approval of a majority of the members of the Legislative Assembly." *DCBS v. Muliro*, 359 Or 736, 745, 380 P3d 270 (2016) (internal quotation marks omitted). If the statute does not define the disputed term, we initially assume that

the term has its "plain, natural, and ordinary" meaning. *Id.* at 746 (quoting *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993)). That is, if the legislature has not defined a term and if nothing suggests that the legislature intended the term to have a specialized meaning, we often consult dictionary definitions on the assumption that, absent a specialized definition, the dictionary definition reflects the meaning that the legislature would have intended. Importantly, we do not interpret statutes solely based on dictionary definitions; instead, we examine word usage in context to evaluate whether competing definitions fit with what the legislature more likely intended. *See Kaser v. PERS*, 317 Or App 498, 502-03, 506 P3d 1134, *rev den*, 370 Or 214 (2022) (so stating).

The hindering prosecution statute provides, in full:

"(1)  A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:

"(a)  Harbors or conceals such person; or

"(b)  Warns such person of impending discovery or apprehension; or

"(c)  Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or

"(d)  Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or

"(e)  Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or

"(f)  Aids such person in securing or protecting the proceeds of the crime.

"(2)  Hindering prosecution is a Class C felony."

ORS 162.325. As noted earlier, defendant was charged with violating ORS 162.325(1)(d), which has three main statutory components, the first two of which are not at issue in this appeal. First, the defendant must have the specific intent, which is either an intent "to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony" or an intent "to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime." ORS 162.325(1).

Second, the defendant must perform an act that "[p]revents or obstructs" another person "from performing an act which might aid in the discovery or apprehension of such person." ORS 162.325(1)(d); *see also State v. Hansen*, 253 Or App 407, 412-13, 290 P3d 847 (2012) (concluding that the term "prevent" "implies that a person does some act to stop an occurrence from happening" and the term "obstruct" "implies making someone's action more difficult, as opposed to stopping the action completely").

Third, the defendant's act must be done "by means of force, intimidation or deception." ORS 162.325(1)(d). As noted earlier, because the indictment in this case alleged that defendant prevented or obstructed a person "by means of force" from performing an act that might have aided in the apprehension of Salah, we focus on the term "force." As explained below, because we ultimately conclude that defendant did not use force against the officers or Salah, we assume without deciding that the use of force contemplated in ORS 162.325(1)(d) could be force against the officers attempting to make the arrest or force against another person. Moreover, for the same reason, we need not decide whether defendant's acts prevented or obstructed the officers' efforts to arrest Salah or Salah's ability to aid in his own apprehension.

The term "force" is not defined in the statute, and thus we initially look to the dictionary definition. *See Dept. of Rev. v. Faris*, 345 Or 97, 101, 190 P3d 364 (2008) (explaining that, when a term is not statutorily defined, we look to the dictionary definition); *State v. James*, 266 Or App 660, 667 n 3, 338 P3d 782 (2014) ("Because the content of

*Webster's*—excluding the addenda section—has remained static since 1961, in general, it is appropriate to treat it as a contemporaneous source for statutes dating from at least that point forward[.]"). The definition of "force" in *Webster's Third New Int'l Dictionary* 887 (unabridged ed 2002) provides, in part:

> "1 a : strength or energy [especially] of an exceptional degree : active power : VIGOR *** c : power to affect in physical relations or conditions *** 3 a : power, violence, compulsion, or constraint exerted upon or against a person or thing *** b : strength or power of any degree that is exercised without justification or contrary to law upon a person or thing c : violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death."

(Boldface omitted.) The broad definition of force, which includes "power, violence, compulsion, or constraint" and "strength or power of any degree," does not settle the matter. Based on the dictionary definition alone, both parties' interpretations are plausible. Thus, we turn to the context and legislative history of the statute to aid in our interpretation of "force" and what the legislature may have intended. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (explaining that dictionary definitions do not tell us what words mean, but they provide guidance as to what words can mean depending on the context and manner in which they are used).

When interpreting the text and context of a statute, we "consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole." *Unger v. Rosenblum*, 362 Or 210, 221, 407 P3d 817 (2017). Although nothing precludes the legislature from defining a term to have different meanings in different statutes, we generally assume that the legislature intended to use terms in related statutes consistently, unless there is evidence to the contrary. *Cloutier*, 351 Or at 99.

The hindering prosecution statute was enacted as part of the 1971 Revised Criminal Code, and it has not been amended since. Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report

§ 207 (July 1970). The commentary to the hindering prose-
cution statute does not discuss the intended meaning of the
word "force." Thus, we begin by looking at other parts of the
1971 Revised Criminal Code that use the word "force" to
inform our understanding of what the legislature would have
intended it to mean at that time. *See Hansen*, 253 Or App
at 413 (examining the definition of the term "obstruct" in
another part of the 1971 Revised Criminal Code to deter-
mine the legislature's intent for the definition of "obstruct"
in the context of ORS 162.325(1)(d)).

    The first example in the 1971 Revised Criminal
Code is the crime of obstructing governmental administra-
tion, which provided that "[a] person commits the crime of
obstructing governmental administration if [the person]
intentionally obstructs *** by means of intimidation, force,
physical interference or obstacle." Final Draft and Report
§ 198(1); *see also* ORS 162.235 (setting out the current ver-
sion of the crime, which has been amended since its initial
adoption in 1971). The commentary noted that the prohibited
conduct must be manifested by "threats, violence or physical
interference" to limit the prohibited conduct to avoid con-
stitutional issues. Commentary to Criminal Law Revision
Commission Proposed Oregon Criminal Code, Final Draft
and Report § 198, 199 (July 1970). The parallel structure
of the crime and the corresponding commentary suggests
that the commission equated "intimidation" with "threats,"
"force" with "violence," and "physical interference or obsta-
cle" with "physical interference." Moreover, the use of the
phrase "physical interference or obstacle" suggests that the
commission intended to prohibit any physical act that cre-
ates an obstruction to governmental administration; how-
ever, it did not use the term "force" to describe that broad
range of conduct.

    The second example in the 1971 Revised Criminal
Code involves resisting arrest, which defined "resists" as
"the use or threatened use of violence, physical force or
any other means that creates a substantial risk of physical
injury to any person." Final Draft and Report § 206(2); *see
also* ORS 162.315 (setting out the current version of resisting
arrest, which has been amended since its initial adoption in

1971). The commentary noted that resisting arrest usually involved "physical violence directed at the arresting officer" and was thus limited "to the use, or threatened use, of physical violence or other acts producing a 'substantial risk of physical injury.'" Commentary § 206 at 204. Therefore, for purposes of resisting arrest, the term "physical force" involved some level of physical violence or other acts that produce a risk of physical injury and not just any affirmative physical act. Taken together, those two examples tend to show that the term "force" means something beyond "any affirmative physical act" as the state contends.

That understanding of the term "force" comes more into focus when considering the differences between two other examples in the 1971 Revised Criminal Code: escape in the third degree and escape in the second degree. Third-degree escape occurred when an offender "escapes from custody," whereas escape in the second degree occurred when an offender "uses or threatens to use physical force escaping from custody." Final Draft and Report §§ 190(1), 191(1)(a); *see also* ORS 162.145 (setting out codified version of third-degree escape, which has not been amended since its adoption in 1971); ORS 162.155 (setting out the current version of second-degree escape, which has been amended since its initial adoption in 1971). Thus, it is unlikely that the commission intended "force" to mean "any affirmative physical act," because that construction would mean that there was no difference between third- and second-degree escape.

Although we are not required to conclude that the legislature in adopting the 1971 Revised Criminal Code would have intended "force" to have the same meaning in all the statutes, there is no evidence to the contrary. In fact, there are places within the criminal code where the commission likely intended to criminalize the concept of "any affirmative physical act," but it did not use the term "force." Instead, the phrase "by word or conduct" was used to describe a broad range of prohibited conduct. For example, a person committed menacing "if by word or conduct [the person] intentionally attempts to place another person in fear of imminent serious physical injury." Final Draft and Report § 95(1). The commentary explained that it was

"intended to cover not only menacing physical acts but also threatening words unaccompanied by a physical movement." Commentary § 95 at 96. The commission thus specified that "physical acts" and "physical movements" of any kind could be prohibited if accompanied by the requisite intent.

Similarly, second-degree robbery provided that a person committed the crime if the person "[r]epresents by word or conduct that [the person] is armed with what purports to be a dangerous or deadly weapon." Final Draft and Report § 149(1)(a). The commentary observed that it prohibited acts that "create[] the impression that [the person] is armed." Commentary §§ 148-150 at 155 (emphasis omitted). The commission described a broad range of conduct, including any act that creates the impression that the offender is armed such as using the "hand-in-pocket" technique or a fake weapon. Accordingly, in both crimes, the term "conduct" was likely intended to mean "any affirmative physical act." Thus, instead of using the term "force" to mean "any affirmative physical act," it is likely that the criminal code would use a different term. Said differently, if the legislature had intended the hindering prosecution statute to apply as broadly as those two statutes, it is doubtful that it would have chosen the term "force."

Finally, we have reviewed the legislative history surrounding the adoption of the hindering prosecution statute, and it does not further illuminate the meaning of "force." It is sufficient that the legislature used the word "force" when prohibiting conduct that involves violence or a risk of physical harm and used phrases such as "by word or conduct" or "physical interference" to describe mere affirmative physical acts. In short, we conclude that the definition of "force" means more than "any affirmative physical act" for purposes of the hindering prosecution statute. Given the underlying facts in this case, however, we need not delve deeper into the particular contours of the term.

Turning back to the facts of this case, we conclude that, under the proper construction of the phrase "by means of force," defendant did not use force against Salah or the officers. Defendant's acts included stretching out his arms and moving back and forth to keep Salah up against the

wall. When the officers eventually apprehended Salah, they were able to do so by grabbing defendant's arm and pulling him away, and defendant did not resist. Those are mere physical acts and physical movements that do not qualify as "force" as that term is used in the hindering prosecution statute. Although defendant temporarily created a barrier between the officers and Salah, which obstructed and interfered with the officers' apprehension of Salah by slowing it down, defendant's actions did not rise to the level of "force." Accordingly, we conclude that there was insufficient evidence for the trial court to enter a judgment of conviction.

Conviction on Count 1 reversed; otherwise affirmed.