Argued and submitted January 8, decision of Court of Appeals reversed, judgment of circuit court affirmed May 8, 2008

STATE OF OREGON,
*Petitioner on Review,*

*v.*

NATHAN DONOVAN PACHMAYR,
*Respondent on Review.*

(CC C032969CR; CA A126620; SC S055206)

185 P3d 1103

David B. Thompson, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Bronson D. James, Chief Deputy Public Defender, Salem, argued the cause and filed the briefs for respondent on review. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services, Legal Services Division.

WALTERS, J.

**WALTERS, J.**

This is a criminal case in which the trial court allowed the district attorney to amend an indictment at the close of the state's case-in-chief. On appeal from that decision, the Court of Appeals held that Article VII (Amended), section 5, of the Oregon Constitution mandated that the grand jury, rather than the district attorney, make that amendment. We conclude that the indictment was defective in form only, and that the trial court correctly permitted the district attorney to amend it. We reverse the decision of the Court of Appeals and affirm defendant's conviction.

Defendant drove a car over a highway median and into another car, injuring the two occupants of the other car as well as a passenger in his car. Based on that incident, the grand jury charged defendant with, among other things, three counts of assault in the second degree—one count for each victim. ORS 163.175(1)(c) defines the relevant crime:

> "A person commits the crime of assault in the second degree if the person:
>
> "\* \* \* \* \*
>
> "(c) Recklessly causes serious physical injury to another by means of a *deadly or dangerous weapon* under circumstances manifesting extreme indifference to the value of human life."

(Emphasis added.)

Counts 1 and 3 of the indictment alleged that defendant had committed assault in the second degree by means of a "dangerous weapon." Count 2 alleged that defendant had committed assault in the second degree by means of a "deadly weapon." All three counts described the pertinent weapon as "to wit: an automobile."

At trial, the state presented evidence that defendant drove the car recklessly and thereby caused physical injury to all three victims. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on Count 2, arguing that the state had failed to present evidence from which the jury could find that he had used a deadly weapon.

A deadly weapon is distinguished from a dangerous weapon by ORS 161.015:

"(1) 'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

"(2) 'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

The state acknowledged that it had not adduced evidence that the car was a deadly weapon, but argued that the use of the term "deadly weapon" in Count 2 was merely a "scrivener's error." The state sought permission of the trial court to amend Count 2 to match Counts 1 and 3 and allege that the car was a dangerous weapon. The trial court allowed the amendment, and the jury convicted defendant on all three counts.

Defendant appealed his conviction on Count 2, arguing that the amendment was not merely a matter of form because it had materially altered the indictment, and that the Oregon Constitution requires that the grand jury make such amendments. The Court of Appeals held that the amendment was one of substance, not form, and reversed. *State v. Pachmayr*, 213 Or App 665, 162 P3d 347 (2007). We allowed the state's petition for review.

Article VII (Amended), section 5, of the Oregon Constitution provides, in part:

"(3) Except as provided in subsections (4) and (5) of this section, *a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury*.

"(4) The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"* * * * *

"(6) An information shall be substantially in the form provided by law for an indictment. *The district attorney may*

*file an amended indictment* or information *whenever, by ruling of the court, an indictment or information is held to be defective in form."*

(Emphases added.)

To determine whether the district attorney was permitted to make the amendment in this case, we must determine whether the indictment was defective in "form." We begin with an examination of the text and history of the constitutional provision permitting district attorneys to amend indictments and the case law concerning that provision. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992).

The constitutional text provides that only the grand jury may indict a defendant for a crime punishable as a felony, unless the defendant waives indictment, in which case the district attorney may bring the charge on information. Or Const, Art VII (Amended), § 5(3) and (4). The trial court may permit the district attorney to amend either an indictment or an information, but only if it is defective in "form." *Id.* at § 5(6).

The current version of Article VII (Amended), section 5, of the Oregon Constitution was adopted in 1974. It is substantially similar to Article VII (Original), section 18, of the Oregon Constitution (1908), which was amended to permit the district attorney to amend indictments held to be defective in "form."[1] Neither the 1974 nor the 1908 version defines the terms "defective in form" or "form." However, the Oregon statutes that were in place at the time that the 1908 provision was enacted did use substantially similar terms. Those statutes distinguished between the allegations in an indictment that were necessary to make the indictment sufficient to charge a crime and other defects or imperfections that did not affect the sufficiency of the indictment. Those statutes referred to the latter as "matters of form."

---

[1] Article VII (Original), section 18 (1908), provided, in part:

"No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this state, except upon indictment found by a grand jury; *provided, however*, that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form."

(Emphasis in original.)

Section 1314 of the statutes that were in effect in 1908 provided the requirements for a *sufficient* indictment:

"The indictment is sufficient if it can be understood therefrom:

"1. That it is entitled in a court having authority to receive it, though the name of the court be not accurately stated;

"2. That it was found by a grand jury of the county in which the court was held;

"3. That the defendant is named, or if his name can not be discovered, that he is described by a fictitious name, with the statement that his real name is to the jury unknown;

"4. That the crime was committed within the jurisdiction of the court, except where, as provided by law, the act, though done without the county in which the court is held, is triable therein;

"5. That the crime was committed at some time prior to the finding of the indictment, and within the time limited by law for the commencement of an action therefor;

"6. That the act or omission charged as the crime is clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended;

"7. That the act or omission charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case."

*The Codes and Statutes of Oregon*, title XVIII, ch VIII, § 1314 (Bellinger & Cotton 1901).

Section 1315 of those statutes provided that an indictment was not insufficient if it was defective in form:

"No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Thus, those statutes drew a distinction between the substantive aspects of an indictment that were required to render the indictment sufficient and the formal aspects of an

indictment, and provided that defects in the formal aspects of an indictment were defects that did not prejudice the defendant or affect the sufficiency of the indictment. The 1891 *Black's Law Dictionary*, which was in general use in 1908, recognized the same distinction in defining the word "form," and explained as follows:

> "The distinction between 'form' and 'substance' is often important in reference to the validity or amendment of pleadings. If the matter of the plea is bad or insufficient, irrespective of the manner of setting it forth, the defect is one of substance. If the matter of the plea is good and sufficient, but is inartificially or defectively pleaded, the defect is one of form."

*Black's Law Dictionary* 510 (1st ed 1891).

The 1908 constitution also used the words "defective in form," and we have no reason to believe that it used those words in a different sense than that in which they were used in common parlance and contemporaneous statutes. Therefore, the constitution prohibited the district attorney from amending an indictment that was insufficient to charge the crime—an indictment that was defective in substance—in order to make it sufficient, but allowed the district attorney to correct other defects—defects in form.

The first case to consider the district attorney's authority to amend indictments after the constitution was amended in 1908 confirms that interpretation. In *State v. Moyer*, 76 Or 396, 149 P 84 (1915), the defendant demurred to an indictment that alleged that he had set fire to a stable, but did not allege that the stable was the property of another—an allegation necessary to state the crime. The trial court sustained the demurrer, but permitted the district attorney to amend. The Supreme Court reversed the defendant's conviction, and drew a distinction between matters of substance that are "essential to the charge" and matters of form:

> "Our Constitution contains the only provision which authorizes such an amendment, but only as to form; and there seems to be a well-recognized distinction between matters that are purely matters of form and matters that go to the substance of the indictment, namely, formal matters which are not essential to the charge and merely clerical

> errors, such as where the defendant cannot be misled to his prejudice by the amendment, would be the only cases which are permissible under our Constitution."

*Id.* at 399.

Since *Moyer*, the court has continued to consider the allegations of an indictment that are essential to the charge to be matters of substance. *See, e.g., State v. Wimber*, 315 Or 103, 114, 843 P2d 424 (1992) ("A matter that is essential to show that an offense has been committed is a matter of substance."). Other nonessential allegations are matters of form, and defects in those allegations may be corrected by district attorney amendment.

A defect in an indictment may or may not be apparent from the face of the indictment. On the surface, an indictment may appear to be both sufficient and accurate, but extrinsic facts may demonstrate insufficiency or inaccuracy. For example, in *State v. Woodson*, 315 Or 314, 845 P2d 203 (1993), the indictment alleged that the defendant committed rape. At trial, the state offered evidence to prove only attempted rape. The indictment was sufficient on its face, but defective because the allegations in the original indictment did not match the proof at trial. The court held that the constitution permitted amendment because the crime of rape includes the crime of attempted rape. ORS 136.460(1); *Woodson*, 315 Or at 319-20. As the court explained, "the interlineation effected *no* change in the indictment; the indictment *already charged* defendant with, and he could have been convicted of, attempted rape." *Id.* at 319 (first emphasis in original; second emphasis added). Therefore, the defect in the indictment pointed up by the variance in proof was one of form, and the district attorney was permitted to amend the indictment to cure that defect. *See also State v. Long*, 320 Or 361, 885 P2d 696 (1994) (indictment facially sufficient, but alleged time period of offense was incorrect; district attorney permitted to amend).

■ The defect in the indictment in this case also did not appear on the face of the indictment. The proof presented at trial revealed the defect and we turn now to whether that defect was one of substance or form. In *Wimber*, the court set out four questions for consideration in that analysis:

"(1) D[oes] the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

"(2) D[oes] the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? * * *

"(3) [I]s the amendment itself sufficiently definite and certain? * * *

[And, if the amendment deletes allegations, we ask a fourth question:]

"(4) D[o] the remaining allegations in the indictment state the essential elements of the offenses?"

315 Or at 114-15. Those questions are tailored to the "constitutional purposes of requiring an indictment by a grand jury," which are:

" '(1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction.' "

*Id.* at 115 (quoting *State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948)). *Wimber* phrased the questions a court should ask as questions about the nature of the proposed amendment and not as questions about the indictment itself. That is sensible because, as we have noted, the defect in an indictment may not be apparent on the face of that document. We often must examine the proposed amendment and its effect on the indictment to understand the nature of the defect it seeks to remedy.

■　　In considering the first *Wimber* question—whether the amendment changes the essential nature of the charge against defendant—*Woodson* is particularly instructive. Here, assault with a dangerous weapon is not a statutory "lesser included offense" of assault with a deadly weapon, but

the principle of *Woodson* compels us to examine whether, by charging defendant with assault with a deadly weapon, the state "already charged" him with assault with a dangerous weapon. *Woodson*, 315 Or at 319. Count 2 of the original indictment charged defendant with assault with a "deadly weapon." Importing the definition of "deadly weapon" into the indictment, the indictment alleged that defendant

> "recklessly cause[d] serious physical injury to another by means of any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury under circumstances manifesting extreme indifference to the value of human life."

*See* ORS 163.175(1)(c); ORS 161.015(2). Importing, instead, the definition of "dangerous weapon" into the indictment, the indictment alleged that defendant

> "recklessly cause[d] serious physical injury to another by means of any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury under circumstances manifesting extreme indifference to the value of human life."

*See* ORS 163.175(1)(c); ORS 161.015(1).

Defendant argues that the two charges are qualitatively different. First, he contends, there is a meaningful distinction between the objects[2] that constitute deadly and dangerous weapons. A deadly weapon is an "instrument, article or substance," whereas a dangerous weapon is a "weapon, device, instrument, material or substance." *Compare* ORS 161.015(1) *with* ORS 161.015(2). Both definitions use the term "instrument," and defendant does not argue that a car is not an "instrument." Thus, the car is an object that could qualify as either a deadly or a dangerous weapon. In our view, the objects listed in the two definitions are not meaningfully distinguishable, at least for purposes of this case.

---

[2] Although the word "object" is not used in the definition of either a deadly or dangerous weapon, we use it here for the sake of simplicity to encompass all of the items in the statutory lists.

The second difference that defendant points out between assault with a deadly weapon and assault with a dangerous weapon is the quality of the object—the car—that makes it deadly or dangerous in nature. Defendant argues that a deadly weapon must be designed to be capable of causing serious injury, while a dangerous weapon must be used under circumstances that make it so. ORS 161.015(2).

A weapon is "deadly" if it is "specifically designed for and presently capable of causing death or serious physical injury." ORS 161.015(2). A weapon is "dangerous" if "under the circumstances in which it is used," it is "readily capable of causing death or serious physical injury." ORS 161.015(1). The second clauses of the two definitions are substantially similar and defendant does not contend otherwise. It is the first clause of each definition to which defendant directs our attention. He argues that the deadly weapon focus on "design" makes that definition different in its essential nature from the dangerous weapon focus on "circumstances of use."

The dichotomy that defendant sees disappears, however, upon close inspection of this particular indictment and the definition of "deadly weapon." The original indictment alleged not only that the car was designed to be capable of use in a seriously injurious fashion, but also that the circumstances of its use made it capable of causing such injury. The original indictment alleged that defendant drove the car "recklessly." A car that is not designed to be capable of causing serious injury and that is, therefore, not a deadly weapon, nonetheless may be a dangerous one if it is used "recklessly." *State v. Hill*, 298 Or 270, 276-77, 692 P2d 100 (1984). Before it was amended, the indictment also alleged that defendant caused serious injury to another "under circumstances manifesting extreme indifference to the value of human life"—the precise circumstances of use that make an object dangerous. Therefore, although the original indictment did not use the phrase "dangerous weapon," it contained all of the allegations that were necessary to make out a charge under that theory: that defendant drove a car, and did so under circumstances that made it capable of causing death or serious physical injury.

The original indictment was defective because it included a "design" allegation when the car was not designed to be capable of causing serious injury. But like the allegation in *Woodson*, that additional allegation, although inaccurate, did not render the indictment insufficient. Including that extra allegation was not, therefore, a defect of substance. *See also State v. Jewett*, 48 Or 577, 586, 85 P 994 (1906) ("If the necessary averments appear in any f[orm] or may by fair construction be found anywhere within the text of the indictment, it is sufficient.") (citing *US v. Howard*, 132 F 325, 334 (Tenn 1904)); *State v. Humphreys*, 43 Or 44, 48, 70 P 824 (1902) (allegation which is "not necessarily descriptive of the offense may be regarded as surplusage and rejected, without vitiating the pleading"); *State v. Horne*, 20 Or 485, 486, 26 P 665 (1891) ("mere surplusage" does not render indictment insufficient). Because the original indictment alleged that defendant used the car under circumstances that rendered it capable of causing injury, it already charged the crime of assault with a dangerous weapon. The amended indictment did not require defendant to defend against any allegations that were not already included in the original indictment.

Defendant urges a different result, citing *State v. Russell*, 231 Or 317, 372 P2d 770 (1962), for his argument that the defect in the indictment was not one of form. In that case, the state charged the defendant with stealing " 'a certain yearling Hereford heifer,' " but proved that the defendant stole a " 'steer calf.' " *Id.* at 318. The court reversed the defendant's conviction, holding that the difference was material because the word "heifer" was the "only statutory word descriptive of livestock to be found in the indictment." *Id.* at 320. The dissent disagreed, calling attention to the fact that the state's allegation that the animal was a yearling Hereford brought it within the terms of the statute, which forbade the theft of any calf, whether male or female. *Id.* at 323-24. A yearling Hereford is a calf with a white face and red body. *Webster's Third New Int'l Dictionary* 1059 (unabridged ed 1961). We agree with the dissent that the state's specification that the calf was a female, rather than a male, was an unnecessary, additional recitation, and immaterial to the charge of stealing livestock.

■     Although the principle stated in *Russell*, that "a defendant cannot be tried for one crime and convicted of another[,]" 231 Or at 321, is certainly correct, it is also true that when an indictment alleges facts that are unnecessary surplusage, those facts are not essential to the crime and do not define it. The result in *Russell* is inconsistent with the latter principle, and we overrule it.

■     Having determined that the amendment to the original indictment in this case did not alter its essential nature, we proceed to consider the second *Wimber* question, which is whether the amendment prejudiced defendant's right to notice of the charges against him to protect against double jeopardy. The state argues that defendant could not have been misled or prejudiced by the "scrivener's error" in Count 2, because Counts 1 and 3 put him on notice that the state was charging that the car he drove was "dangerous" as well as "deadly." We do not look to the other counts in the indictment for the necessary notice. The allegations in Count 2 of the indictment apprised defendant of the allegations against which he ultimately was required to defend.

■     The amendment also did not prejudice defendant by depriving him of a defense, contrary to the conclusion reached by the Court of Appeals. The Court of Appeals wrote:

> "Although the amendment did not alter the essential nature of the indictment against defendant, it did alter the availability to him of a defense. Count 2 charged defendant with committing assault in the second degree by means of a deadly weapon. * * * Defendant attempted to defend against that charge by arguing that the motor vehicle he was driving did not meet the statutory definition of a deadly weapon. When the trial court amended Count 2 of the indictment to allege assault by means of a dangerous weapon, defendant could no longer avail himself of the defense, nor effectively present evidence, that his car was not a deadly weapon."

*State v. Pachmayr*, 213 Or App 665, 669-70, 162 P3d 347 (2007) (footnotes omitted). That reasoning is flawed. A defendant is not necessarily "deprived of a defense," as that phrase is used in *Wimber*, when that defense is merely that the state failed to prove all of the allegations of the original indictment. If that were the case, any amendment to an indictment that

deleted or changed an allegation would eliminate a defense. Indeed, *Woodson* illustrates that principle. In that case, the indictment charged a completed rape and the district attorney amended it to charge only an attempted rape. Under the Court of Appeals' rationale in the current case, that amendment would have deprived the defendant of a defense, namely, that he did not commit a completed rape. However, the court in *Woodson* discerned no such deprivation, and upheld the amendment. If an amendment eliminates an independent defense, such as self-defense, that was available to defend against the original indictment, but becomes unavailable when the indictment is amended, that amendment prejudices a defendant within the meaning of the second *Wimber* question. But such prejudice does not result when the defendant is precluded only from arguing that the state failed to prove allegations that were deleted by the amendment.[3]

We are satisfied that, in this case, the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based. *State v. Long*, 320 Or 361, 370-71, 885 P2d 696 (1994) (addressing those concerns in deciding whether Article VII (Amended), section 5, was violated); *Wimber*, 315 Or at 117 (Unis, J., dissenting, expressing those concerns). The grand jury's role in the criminal process is independent of the district attorney's role, and serves a critical function in protecting individual liberties. *State v. Burleson*, 342 Or 697, 703, 160 P3d 624 (2007). We do not make assumptions from Counts 1 and 3 about what the grand jury "actually" intended to charge with regard to Count 2. In this case we know—without speculating—that the grand jury, by signing the indictment on Count 2, certified that it found sufficient evidence to charge defendant with driving a car—an instrument capable of causing death or serious injury—recklessly, "under circumstances manifesting extreme indifference to the value of human life." In so doing, the grand jury necessarily certified that it found sufficient evidence to charge defendant with assault with a dangerous weapon on Count 2.

---

[3] The third and fourth *Wimber* questions address matters that are not of concern in this case or that we have already discussed. They do not require further analysis.

Count 2 of the original indictment in this case contained the allegations necessary to charge defendant with assault with a dangerous weapon. The defect in the indictment was a defect in form only, and the trial court did not err by allowing the district attorney to amend it.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.