Argued and submitted April 25, affirmed October 23, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONNA MARIE PATTON,
*Defendant-Appellant.*

Klamath County Circuit Court
0902276CR; A146229

312 P3d 581

Mary M. Reese, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Duncan, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of first-degree theft, which required the state to prove that the property she was accused of stealing had a value of more than $750. ORS 164.055(1)(a) (2007).[1] On appeal, she argues that the trial court erred in denying her motion for judgment of acquittal. Specifically, she argues that there was insufficient evidence to prove the charges in the indictment, which alleged the theft of "copper wire" worth more than $750. Instead, defendant argues, the trial court relied on the value of the electrical cables and cords *containing* copper wire, a prejudicial variance between the pleadings and the proof requiring acquittal. We conclude that the evidence was sufficient to prove the charges in the indictment, and we therefore affirm.

In ruling on the sufficiency of the evidence in a criminal case, we must "examin[e] the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

On May 14, 2008, a witness observed two men removing electrical cables and extension cords from a construction site in Klamath Falls. The witness later saw defendant arrive at the site in a truck. The two men then loaded the electrical cables and extension cords into the truck and the three left the scene. The witness reported these events to the police, and, after a brief investigation, defendant was arrested and charged with first-degree theft. The grand jury indictment alleged:

> "The [defendant] *** did unlawfully and knowingly, commit theft of *copper wire, of the total value of $750 or more*, the property of another, said act of defendant being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

(Emphasis added.)

---

[1] ORS 164.055 was amended in 2009; it now requires the state to prove that the value of stolen property is $1,000 or more. Or Laws 2009, ch 16, § 3. References throughout are to the 2007 version.

Before trial, defendant moved for a continuance due to the recent death of her father. The trial court asked whether defendant would stipulate to the testimony of the witnesses, and defendant raised the issue of the property's value, asserting that the "value of the property was under $150" because "they melted [the electric cables and extension cords] down and that's all they got for the copper [that was sold to a salvage shop]." The motion for a continuance was denied, and a bench trial ensued. The state's case included testimony from the project supervisor of the construction site and from the witness who saw and reported the events. The project supervisor testified that the items taken included four large electrical cables valued at $379 each and six ten-gauge electrical cords valued at $89 each. He described the electrical cables as "large copper conductors" that each weighed between 40 and 50 pounds, were 100 feet long, and one inch in diameter. The cables, he testified, were made of six- or seven-gauge stranded copper wire coated with black rubber insulation with "twist-locks" at each end; the component parts cannot be purchased separately. The six extension cords, the supervisor testified, are also 100 feet long and contain ten-gauge copper wire. The total value of the four electrical cables and six extension cords, the supervisor testified, was $2,050.

At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state had failed to provide any evidence that the value of the copper wire within the cables and cords exceeded $750. Further, defendant argued that if the state was attempting to use the electrical cables and extension cords as a basis for finding a property value over $750, it constituted a material variance from the indictment. Defendant explained:

"The grand jury was presented with copper wire. They were not presented with extension cords; * * * they were not presented with large conductors. Some of these items may have copper wire in them, but they've alleged copper wire. There's an absolute failure of proof as to the value of the copper wire."

The trial court denied the motion, stating that the value of the items was "$379 apiece for the four [electrical cables],

*** and six yellow-jacket, ten-gauge extension cords at $89 apiece."

Defendant then presented her case.[2] Although her primary theory was that she had never been involved in any scheme to steal the property, she also testified, with respect to the value of the copper wire, that she had recently sold an unrelated batch of copper wire for approximately $200. She testified that the copper involved in that sale filled to three-quarters full a twelve inch by twelve inch by eighteen inch box, which weighed "significantly more" than one of her "babies." After closing arguments, the court found defendant guilty of first-degree theft.

On appeal, defendant argues that the trial court erred in denying her motion for judgment of acquittal. She argues that the state's reliance on the value of the electrical cables and extension cords was insufficient to prove beyond a reasonable doubt that the value of the property alleged in the indictment—the copper wire—exceeded $750. Further, she contends that the trial court could not lawfully rely on the evidence presented at trial to reach its conclusion on that element of first-degree theft because it constitutes a prejudicial variance from the state's theory of criminal liability alleged in the indictment. Specifically, the state's reliance on the value of the electrical cables and extension cords, rather than the value of copper wire, was prejudicial to defendant because it required her to develop a different argument in defense. *State v. Hansen*, 253 Or App 407, 290 P3d 847 (2012); *State v. Newman*, 179 Or App 1, 39 P3d 874 (2002).

The state responds that the evidence was sufficient in two ways to prove that there was no variance between the pleadings and the proof. First, the state argues that the value of the electrical cables and extension cords represents the value of the "copper wire." The state asserts that the value of a "large copper conductor" designed solely to carry

---

[2] When a defendant moves for judgment of acquittal at the close of the state's evidence and then presents evidence in his or her defense, we consider the whole record to determine whether there is sufficient evidence to support a verdict against the defendant. *State v. Lamphere*, 233 Or 330, 332, 378 P2d 706 (1963); *see also State v. Schneider*, 229 Or App 199, 201, 211 P3d 306 (2009).

electricity is the copper itself. Thus, "it is the value of the copper that is reflected in the market value of the cord, and the trial court correctly relied on that evidence." Second, the state argues that, in combination with the defendant's own testimony about the sale of the unrelated box of copper scraps, the description of the cables and cords allowed the court to make a reasonable inference that the copper contained in the cables and cords had a value over $750.

In the alternative, the state argues that, even if there were a variance between the indictment and the proof, it was not prejudicial to defendant. Specifically, the state relies on the analysis in *State v. Pachmayr*, 344 Or 482, 494-95, 185 P3d 1103 (2008), to argue that defendant was not "deprived of a defense" when the defense is merely that the state failed to prove all of the allegations of the original indictment. *See State v. Wimber*, 315 Or 103, 114-15, 843 P2d 424 (1992) (holding that an amendment to an indictment is prejudicial where it changes the availability of a defense). Relying on *Pachmayr*, the state argues that a variance is only prejudicial when it "eliminates an *independent* defense, such as self-defense." 344 Or at 495 (emphasis added).

We are persuaded that a rational trier of fact could have found beyond a reasonable doubt that the value of the copper wire exceeded $750. The determination of the value of property in a theft case is governed by ORS 164.115(1), which provides that, "[e]xcept as otherwise specified in this section, value means the market value of the property at the time and place of the crime[.]" As that term is used, "market value" means what a willing buyer pays a willing seller. *State v. Pierce*, 153 Or App 569, 575, 962 P2d 35, *rev den*, 327 Or 448 (1998). In this case, the site supervisor, who was also the purchaser of the items, testified as to their value, and the court found the testimony credible. The supervisor testified, and the court believed, that he paid $379 for each of four electric cables and $89 for each of six extension cords. The supervisor also testified that the copper wire for the cables and cords could not be purchased separately; they were manufactured in one piece and had to be purchased in 50 or 100 foot segments. A reasonable finder of fact could conclude, without undue speculation,

that the rubber insulation, twist locks, manufacturing costs and profit margin did not account for $1,300, or 63 percent, of the items' cost. In other words, a reasonable finder of fact could conclude that the copper itself was worth at least $750, or 37 percent of the items' value.

Because the court could reach the conclusion that the value of the copper wire exceeded $750 based on the testimony offered at trial and all reasonable inferences from that testimony, the evidence was sufficient to prove the charges alleged and there was no variance between the allegations in the indictment and the evidence presented at trial. Consequently, we conclude that there was, in fact, no necessary variance between the indictment and the proof; we therefore do not reach defendant's argument that the variance was prejudicial. The trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.