616 March 11, 2026 No. 179

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH L. AINSWORTH,
*Defendant-Appellant.*

Union County Circuit Court
20CR42936; A177199

Thomas B. Powers, Judge.

Argued and submitted February 26, 2024.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Counts 11, 12, and 13 reversed; remanded for resentencing; otherwise affirmed.

Powers, J., concurring in part and dissenting in part.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for two counts of sexual abuse in the first degree, ORS 163.427 (Counts 11 and 14), and two counts of sexual abuse in the third degree, ORS 163.415 (Counts 12 and 13).[1] On appeal, he raises four assignments of error. In the first, he argues that the trial court erred when it permitted the prosecutor to introduce certain evidence about the "continuum of disclosure," without establishing a scientific foundation for its admission. In the second through fourth assignments, he argues that the trial court erred when it permitted the state to amend the indictment as to Counts 11, 12, and 13 to conform those charges to the evidence, without requiring the prosecutor to provide that the "amendments were consistent with the grand jury's findings." We conclude that the trial court did not err when it permitted testimony about the continuum of disclosure. However, we conclude that the amendments to the indictment worked an impermissible variance which violated defendant's rights under Article VII (Amended), section 5(3), of the Oregon Constitution. Because we conclude that the error was not harmless, we reverse defendant's convictions on Counts 11, 12, and 13, remand for resentencing, and otherwise affirm.

## I.   CHANGES TO THE INDICTMENT

We address defendant's second through fourth assignments of error first because those are dispositive on Counts 11, 12, and 13. We review a trial court's grant of a motion to amend the indictment for legal error. *See State v. Pachmayr*, 344 Or 482, 486, 185 P3d 1103 (2008) (reviewing for legal error whether a trial court properly allowed the district attorney to amend an indictment at the close of the state's case-in-chief).

### A.   *Factual and Procedural Background*

Defendant was indicted on numerous counts of sexual offenses alleged to have been committed against his

_____

[1] Defendant was also convicted of two counts of fourth-degree assault, ORS 163.160. Those counts were severed from the sexual abuse counts and were tried separately. Defendant's arguments on appeal pertain only to the convictions for first- and third-degree sexual abuse.

stepdaughters, R and A.[2] Defendant waived jury and tried his case to the court. At trial, R and A testified about defendant's sexual abuse of them, which started after they moved to Oregon in 2018.

At the conclusion of the state's case-in-chief, the prosecutor moved to amend the indictment by changing the date range alleged in Counts 11, 12, and 13, based on an alleged "scrivener's error." The prosecutor sought to expand the date range in Count 11 by two years, so that the charge would read "on or between March 1, 2018 and July 23, 2020" instead of "on or between March 1, 2020 and July 23, 2020." He sought a similar change to Counts 12 and 13, asking the start date for those counts to read August 11, 2019, instead of June 1, 2020, and March 1, 2020, respectively.

Defendant objected, arguing that such an amendment was "absolutely not allowed" because it was a "substantive change to the indictment" which "would have to be re[-]presented to the grand jury." He took the position that the prosecutor could not "modify the date range based on the testimony that comes up at trial" because that "prejudices the defendant in so many different ways."

The court rejected the state's characterization of the change as a "scrivener's error," explaining that the expansion of the date range was "not scrivener's. That's substantive."

In response, the state argued that the dates were not a material element of the charges, and thus the dates in the indictment could be amended under *State v. Long*, 320 Or 361, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995). Defendant countered that *Long* supported his arguments, pointing out that, in contrast to *Long*, the amendment in his case occurred at the "end of the presentation of the state's evidence." Defendant also emphasized that in *Long*, there was "specific evidence" "of what the testimony was at grand jury, and, therefore, the grand jury had actually heard this evidence and that it actually was scrivener's error." He went on to argue that "there was evidence, not just the statement,

---

[2] The indictment also alleged physical abuse against other victims; those counts are not at issue on appeal.

presented of what was presented at grand jury versus this. None of that has happened here and none of that was disclosed." He closed by arguing:

"* * * [T]his does end up being a substantive change with prejudice.

"It violates the Oregon Constitution. Specifically there's no evidence here that the grand jury actually heard this evidence and intended that as the date range. And relying on Article VII, section 5, sub 3 where the grand jury is required to do the indictment."

After a recess, the court granted the state's motion to amend. Relying on *Long*, the court determined that the dates on which the incidents allegedly occurred were not elements of the offense and that "the date proved at trial, as long as it's before the date of the indictment and was within the applicable statute of limitations would be sufficient." The court stressed that these changes did not alter material elements of the indictment because they did not "change[] the actual charge by say having one of the alleged victims not be under the age of 14 or not be under the age of 18." The court did not address defendant's argument that, under *Long*, the state had to prove that the facts adduced at trial were, in fact, those that were presented to the grand jury.

The court permitted defendant to make an additional record after its ruling. Defendant emphasized that the last-minute change in dates deprived him of constitutional notice and impacted his grand jury right. Defendant also emphasized that *Long* required the state to prove that the facts had been presented to the grand jury, and that there was no evidence of that here. In response, the state argued:

"[I]t's not as though the state was aware throughout the pendency of this hearing up to the pretrial that the dates were not within that range. That ultimately came out in testimony yesterday and on Tuesday. So I did want to put the Court on notice that wasn't something that the state potentially would have known simply because the dates ultimately have been at issue throughout this entire trial as to when stuff happened."

Defendant countered that the state's argument proved his point; the state's lack of notice about the testimony demonstrated that the facts had not been presented to the grand jury. He argued:

> "[I]t's a constitutional issue on the right and the duty of the grand jury and that you have to show that this was actually what the grand jury put forward and there was evidence in that case.
>
> "Here now the state is saying, oh, we had no notice, we had no reason, and it's come up at trial, given the evidence at trial. Which in and of itself suggests this was not what happened at grand jury and that's the way the indictment reads the way at grand jury and now we're making changes because of what came forward at trial.
>
> "And there's a substantive difference; this is not just a simple scrivener's error.
>
> * * * * *
>
> "But even regardless of due process, procedural[ly] the role of the grand jury is to return the indictment. The state is supposed to try the indictment as issued by the grand jury and go forward from there and that wasn't addressed in *Long*, it was basically conceded in *Long*. And now given the statements that's even more true."

The trial court considered the arguments and adhered to its prior ruling allowing the state to amend the indictment.

B.  *Discussion of Legal Standard that Applies*

Article VII (Amended), section 5(3), of the Oregon Constitution provides, in relevant part, that "a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury." That right guarantees that a criminal defendant will only be tried for conduct that was presented to the grand jury. *State v. Johnson*, 342 Or App 278, 284, 576 P3d 475 (2025). An indictment also ensures that a defendant has notice of the charges against them so that they can prepare and present a defense and can identify the particular offense for which they have been convicted, so that they can raise a former/double jeopardy challenge to future prosecution. *State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948). An

indictment also ensures that a court is aware of the particular allegations, so that it can determine whether sufficient evidence exists to support any conviction. *Id.*

At the outset, we emphatically reject the state's argument that it could convict defendant based on different facts from those presented to the grand jury, if those facts were similar to what formed the basis of the indictment.[3] The state relies on *State v. Arriaga-Mendoza*, 316 Or App 667, 504 P3d 703 (2021), *rev den*, 369 Or 733 (2022), but as defendant correctly points out, that case did not involve the constitutional right to a grand jury. Moreover, adopting such a position would eviscerate the protections of the grand jury right. It is the grand jury, not the prosecutor, that decides whether conduct meets the standard for a criminal charge. *See, e.g.*, *State v. Wall*, 374 Or 407, 413, 578 P3d 1215 (2025) ("[The grand jury] is an institution in which a group of ordinary citizens must approve of the initiation of the state power to accuse citizens of major crimes. Consequently, it serves as a brake on the state's potential abuse of the accusatory process." (Internal quotation marks and citations omitted.)). The state is therefore not permitted to present some set of facts to the grand jury, secure an indictment, and then convict a defendant on an entirely different set of facts.

Having disposed of that argument, we move on to determining the proper legal framework to analyze defendant's challenge on appeal. Based on our caselaw, this case implicates two possible legal pathways for us to follow. First, when a defendant challenges an amendment to an indictment, we follow the pathway set out in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992). *State v. Benton*, 317 Or App 384,

---

[3] The dissent takes the position that we have mischaracterized the state's argument, and that the most the state argued was that the "amendments did not pose a different factual theory of what was presented to the grand jury." 347 Or App at 631-32 (Powers, J., dissenting). The dissent is mistaken. In its brief, the state argued:

"If complete identity of underlying facts were required, this court's case law on variances in proof at trial would not exist. Under that case law, *the state permissibly may prove criminal charges based on different facts than those presented to the grand jury,* so long as the variance in proof does not alter a material element or otherwise prejudice the defendant."

(Emphasis added.) The state's position that we reject is as we have characterized it.

398-99, 505 P3d 975 (2022), *aff'd*, 371 Or 311, 534 P3d 724 (2023) (recognizing application of *Wimber* on those facts). Second, even where the indictment has not been formally amended but the defendant alleges a difference in proof between the evidence presented to the grand jury and to the jury at trial, also referred to as a variance, we follow the pathway set out in *Long. See Benton*, 317 Or App at 398-99 (recognizing application of *Long* on those facts).

A *Wimber* analysis allows a court to determine whether an amendment is a permissible one of form or an impermissible one of substance. *See State v. Moyer*, 76 Or 396, 399-401, 149 P 84 (1915) (explaining that only amendments to an indictment's form are permissible under the Oregon Constitution). Amendments as to form are those "which are not essential to the charge and [are] merely clerical errors, such as where the defendant cannot be misled to his prejudice by the amendment[.]" *Id.* at 399. Amendments as to substance are ones that are essential to demonstrate that an offense has been committed, and such amendments must be resubmitted to the grand jury. *Id.* at 400.

To determine whether an amendment is a permissible one of form, or an impermissible one of substance, we consider the following questions: (1) Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime?; (2) Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy?; and (3) Was the amendment itself sufficiently definite and certain?[4] *Wimber*, 315 Or at 114-15.

The analysis under *Long* addresses whether the state may permissibly present evidence at trial that varies from the factual proof presented to the grand jury that formed the basis for the allegations in the indictment. *See Benton*, 317 Or App at 398. When a defendant alleges a variance, we ask the following questions to determine whether

---

[4] If the amendment deleted allegations, we ask one additional question: (4) Did the remaining allegations in the indictment state the essential elements of the offenses? However, the state's amendment did not delete an allegation, and thus the additional question would not be applicable to this appeal.

the variance was permissible: (1) Did the variance concern a material element of the crime?; (2) Did the defendant suffer prejudice to their defense?; and (3) Was the defendant, in fact tried on the offense that was indicted by the grand jury? *Johnson*, 342 Or App at 284-85. On the third question, "the state has the burden to show that the factual theory on which the grand jury based the indictment was the same one on which the state tried its case." *Benton*, 317 Or App at 399. If the answer to any of those questions is "yes," the variance is impermissible. *Johnson*, 342 Or App at 285.

Because the indictment here was amended, it initially appears that a *Wimber* analysis is appropriate. However, the specific facts of this case suggest that following the *Wimber* pathway is not correct. Typically, most amendments to the indictment take place pre-trial. *See, e.g.,* *State v. Haji*, 366 Or 384, 388, 462 P3d 1240 (2020); *State v. Woodson*, 315 Or 314, 316-17, 845 P2d 203 (1993); *State v. Williams*, 237 Or App 377, 379, 240 P3d 731 (2010), *rev den*, 350 Or 131 (2011).[5] In such cases, because the prosecutor has not yet presented their case, the only issue before the court is whether the amendment, on its face, is one of substance or form.

However, when the state moves to amend an indictment after it has presented its case-in-chief and the amendment raises the possibility of a variance between the evidence presented to the grand jury and the evidence presented at trial, the state must demonstrate that it has tried its case based on facts that were presented to the grand jury. *See Pachmayr*, 344 Or at 495. In *Pachmayr*, the indictment was amended after the state had presented its case-in-chief. *Id.* at 484. After the Supreme Court applied the *Wimber* test and concluded that the amendment was not one of substance, it proceeded to address the third question under *Long*: whether the amendment permitted defendant to be tried on conduct that was not presented to the grand jury. *Id.* at 495. Because the Supreme Court concluded that the state met its burden to prove that the grand jury had

---

[5] Indeed, we have only found one case that analyzed a post-evidence amendment: *Pachmayr*, which we address below.

heard the same evidence as was presented at trial, the court affirmed the conviction. *Id.*[6]

Here, after the close of its case-in-chief, the state moved to amend the indictment to expand the date range to conform the allegations in Counts 11, 12, and 13 to the evidence that was presented at trial. As defense counsel recognized, and repeatedly argued to the trial court, such an amendment calls into question whether defendant was tried for conduct that was never presented to the grand jury. That is, based on the state's representations to the trial court that it was not previously aware of the time range in which defendant allegedly committed the charged offenses, the grand jury was never presented with evidence of alleged conduct that took place from 2018-2020, but which R and A testified to at trial. Here, even though the indictment was formally amended, defendant's concern was not necessarily about a lack of notice or his ability to prepare a defense, but rather, whether the state had previously presented the same factual theory to the grand jury. Such a concern is better addressed through a variance analysis, which is the legal avenue through which a defendant may vindicate their rights under Article VII (Amended), section 5(3), to have a grand jury determine whether a particular charge should be brought based on facts found by that grand jury. *Johnson*, 342 Or App at 284. We therefore conclude that this case is more appropriately analyzed under the variance framework as set forth in *Long*.

In so doing, we disagree with the dissent that a decision about whether to evaluate a case under *Wimber* or *Long* reduces to a question of whether the indictment was amended. 347 Or App at 633-34 (Powers, J., dissenting). Analytical simplicity has its place but cannot be employed to ignore the actual issues raised by the parties. The danger of doing so is highlighted here because the dissent's

---

[6] Although the dissent takes the position that Pachmayr did not examine whether the defendant was, in fact, tried on facts that had been presented to the grand jury, see 347 Or App at 634 n 1 (Powers, J., dissenting), that position is difficult to reconcile with the opinion, which states, "We are satisfied that, in this case, the grand jury, not the prosecutor, determined the charge to be brought *and found the facts on which the charge was based.*" 344 Or at 495 (citing *Long*, 320 Or at 370-71) (emphasis added).

framework ignores the significant constitutional violation raised by defendant. The fact that the prosecutor was able to obtain an amendment to the indictment does not cut off defendant's constitutional right to be tried only on facts found by the grand jury. Although the formulaic approach to analyze every amendment to an indictment under *Wimber* is correct for the majority of claims that challenge amendments, it is not correct here, given defendant's actual claim.

C.   *Application of* Long

Under *Long*, we begin and end our analysis with the third question: Was defendant, in fact, tried on the offense that was indicted by the grand jury? Here, the record does not demonstrate that the state met its burden to prove that the conduct for which defendant was tried had been presented to the grand jury. Indeed, the record indicates that the state failed to do so. At trial, R and A testified to conduct that occurred prior to the dates charged in the indictment. On that basis, the state moved to amend the indictment. The state represented to the trial court that it was unaware that R and A would give testimony outside the scope of the timeframe alleged in the indictment, which indicates that the grand jury did not hear evidence regarding that alleged conduct prior to returning the indictment. In any event, the state has the burden to prove that the evidence that formed the basis of defendant's conviction was presented to the grand jury, *Benton*, 317 Or App at 399, and it did not meet that burden here.

We address one final, important point, raised in the state's presentation to the trial court and on appeal, and noted in the dissent. The state relies heavily on the fact that the dates are not a material element of the charges that defendant faced, and the dissent finds that point persuasive. We agree that dates are not a material element in this case. *See Haji*, 366 Or at 411. But as we recognized in *Johnson*, a variance "issue cannot be resolved in that manner." 342 Or App at 280 n 1. The concern here is not about the dates themselves, but rather, the significance of those dates to the factual basis for the charges against defendant. Here, the date range in the indictment represented the scope of conduct that the grand jury considered, and for which it returned

an indictment. When the state expanded the range of possible conduct beyond which the grand jury had considered, it permitted the trial court to convict defendant for different conduct that the grand jury never considered. The fact that the dates are not material elements therefore has no impact on the constitutional issue presented here.

Having concluded that defendant's constitutional rights were violated, we turn to whether the error was harmless. "Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a judgment despite error if there is 'little likelihood that the particular error affected the verdict.'" *State v. Roberts*, 340 Or App 220, 229, 570 P3d 279 (2025) (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). Here, the amendment to the indictment expanded the date range to encompass the trial evidence, and the record does not provide a basis to infer that the grand jury heard evidence regarding the factual allegations on which defendant was ultimately convicted. Accordingly, there is more than a little likelihood that the court relied upon evidence at trial that was not presented to the grand jury in finding defendant guilty. Because the constitutional violation was not harmless, we reverse defendant's convictions on Counts 11, 12, and 13.

## II.   CONTINUUM OF DISCLOSURE EVIDENCE

We next turn to defendant's first assignment of error, which challenges the introduction of scientific testimony on the "continuum of disclosure" in the context of child sexual abuse allegations. We review the trial court's ruling on the admissibility of scientific evidence for errors of law. *Jennings v. Baxter Healthcare Corp.*, 331 Or 285, 301, 14 P3d 596 (2000).

In its case-in-chief, the state presented expert testimony by Greathouse, a child forensic interviewer and counselor. Greathouse testified to the phenomena of the delayed disclosure process. As the Supreme Court explained in *State v. Perry*, "delayed reporting" is the "label used by professionals in the field to describe a situation in which a sexually abused child does not report an abusive event immediately but, instead, reports it sometime later." 347 Or 110, 112 n 1,

218 P3d 95 (2009). Greathouse testified about the process of delayed disclosure, why a person may partially delay or disclose abuse, and that some inconsistencies and discrepancies within the disclosure process are considered normal for children. Greathouse also testified about the Oregon Interviewing Guidelines, which are research-based best practices for conducting forensic interviews.

Defendant objected to that evidence, arguing that the testimony should not be admitted without additional foundation showing that it is scientifically valid.[7] The state countered that testimony describing the phenomenon of delayed reporting was already determined to be scientifically valid and admissible under the Supreme Court's decision in *Perry*, and thus, no foundation was necessary. The trial court overruled defendant's objection and permitted the jury to consider Greathouse's testimony.

On appeal, defendant argues that Greathouse's testimony went further than what was approved of in *Perry*, and that the state was required to establish a foundation prior to admitting the testimony for those additional purposes. We do not understand defendant to challenge Greathouse's testimony in its entirety. And indeed, several portions of Greathouse's testimony track that of the expert in *Perry*, including the testimony about research on delayed reporting and delayed reporting as a process. Moreover, in *State v. Akins*, 373 Or 476, 478, 568 P3d 174 (2025), the Supreme Court held that testimony about delayed disclosure was relevant to help the trier of fact assess credibility, regardless of the specific defense theories. Thus, to the extent that defendant challenges Greathouse's testimony because it did not specifically counter his defense theory, *Akins* forecloses such an argument.

Instead, post-*Akins*, we understand defendant to challenge the portions of Greathouse's testimony that explained (1) why a victim of abuse might give incomplete or inaccurate statements during a forensic interview and

---

[7] Defendant also objected on the basis that Greathouse was not qualified to deliver the disclosure testimony, and that the testimony should be excluded under OEC 403. The trial court overruled those objections, and defendant does not assign error to those rulings on appeal.

(2) why a forensic interviewer might choose not to do a second interview or question witnesses about inconsistencies. According to defendant, those purposes were not addressed by *Perry*.

We disagree with defendant's arguments. As to the challenge to Greathouse's testimony about incomplete or inaccurate statements, Greathouse's testimony relied on the same scientific paper (the "Sorenson and Snow" study) that was approved of in *Perry*. 347 Or at 125-26. And importantly, that paper discussed that a disclosing party may recant statements, or "appear[] confused, inaccurate and uncertain" during the disclosure process. Teena Sorensen & Barbara Snow, *How Children Tell: The Process of Disclosure in Child Sexual Abuse*, Volume 70, Number 1, Child Welfare League of America 3, 10 (1991). Because Greathouse's testimony tracks that of the expert's in *Perry* and relied upon the same cited research, we conclude that *Perry* affirmed the scientific validity of the disclosure process explained by Greathouse, including the testimony about incomplete or inaccurate statements. Similarly, we reject defendant's challenge to Greathouse's testimony about the reasons why a forensic interviewer might forgo a second interview or questions about inconsistencies. The guidelines for forensic interviews are based on the delayed reporting research, *i.e.*, the disclosure process continuum addressed in *Perry*. Because the interview protocols and guidelines are based on research that has already been established as scientific, the state was not required to lay any additional foundation for its introduction.

In sum, the evidence was admitted to demonstrate that various aspects of disclosures are not necessarily inconsistent with alleged abuse and to provide the factfinder with context to help assess the complainants' credibility. The purpose of that testimony falls within the scope of *Perry* and *Akins*. Because the state did not need to lay any additional foundation for testimony about inconsistencies or recantations and interview protocols, the trial court did not err by admitting Greathouse's testimony.

Counts 11, 12, and 13 reversed; remanded for resentencing; otherwise affirmed.

**POWERS, J.,** concurring in part dissenting in part.

I respectfully disagree with the majority opinion's conclusion that the trial court impermissibly granted the state's motion to amended Counts 11, 12, and 13. Because the record shows, in my view, that the amendments did not impermissibly shift the factual theory on which the grand jury indicted defendant, we should conclude that the trial court did not err. Thus, unlike the majority opinion, I would affirm those counts for the reasons explained below. I fully join the portion of the majority opinion that rejects defendant's first assignment of error, challenging the introduction of scientific testimony on the "continuum of disclosure" in the context of child sexual abuse allegations. Accordingly, I concur in part and dissent in part.

A.  *Background*

In my view, the trial court did not err in granting the state's motion to amend the indictment as to Counts 11 through 13. As explained below, the places where I part ways with the majority opinion include how we characterize the state's primary argument on appeal, which in my view asserts that the amendments did not shift the factual theory presented to the grand jury, and whether to follow the *Wimber* analysis to address defendant's assignment of error. To that end, I begin with setting out my understanding of the case.

The original indictment alleged that defendant committed Count 11, first-degree sexual abuse against R, between "March 1, 2020 and July 23, 2020," and that defendant committed Counts 12 and 13, third-degree sexual abuse against A, between "June 1, 2020 and June 30, 2020," and "January 1, 2020 and June 1, 2020," respectively. Although not subject to this appeal, Counts 7, 8, 9, and 10 all alleged dates "on or between March 1, 2018 and July 23, 2020," against R, and Count 14 alleged dates "on or between March 1, 2018 and August 10, 2019," against A.

At the conclusion of the state's case-in-chief, the prosecutor moved to amend the dates alleged in the indictment for Counts 11, 12, and 13. Specifically, the state's

motion sought to amend Count 11 so that it would be alleged to have occurred "on or between March 1, 2018 and July 23, 2020," and Counts 12 and 13 so that they would have a start date of August 11, 2019. Thus, the change to Count 11 was made to match the earliest date alleged in Counts 7, 8, 9, and 10, against the same victim, R, and similarly, Counts 12 and 13 were amended to include approximately one year earlier and cover a time period that was just after the time period alleged in Count 14 against the same victim, A.

Defendant objected to the proposed amendments, arguing that those amendments changed the substance of the indictment and that they prejudiced defendant's case. Defendant argued that, under *State v. Long*, 320 Or 361, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995), the prosecution had a duty to show that the evidence that the grand jury heard was the same as that provided at trial. The prosecutor responded that it was a scrivener's error and that it was neither material nor prejudicial. The trial court rejected the state's scrivener's error assertion, but ultimately allowed the amendments after concluding that the material element of the amended charges was the age of the alleged victim, that the expanded date range did not substantively modify that material element, and that it did not otherwise prejudice defendant or impermissibly shift the factual theory presented to the grand jury.

Defendant then moved for a judgment of acquittal, which the trial court denied. That ruling is not challenged on appeal. Defendant proceeded to present his case, and the trial court ultimately found defendant guilty of Counts 11, 12, 13, and 14.

On appeal, defendant argues that the trial court erred in granting the state's motion to amend the indictment, and defendant specifically asserts that the state did not meet its burden to show that the conduct described at trial was the same conduct for which the grand jury indicted defendant. The state responds that the amendments were permissible amendments of form rather than substance. In arguing that the amendments did not alter any material element or prejudice defendant, I disagree with the majority opinion's characterization of the state's arguments. 347 Or

App at 622. In my view, the state contends that the amendments did not pose a different factual theory of what was presented to the grand jury. That is, the state asserts that a "lack of clarity about the specific timing of the same sexual offenses is not an impermissible shift in [the] factual theory." Defendant does not argue that the amendments altered a material element; however, in his reply brief, defendant contends that he is not required to prove prejudice, and even if he was so required, he proved prejudice because he was— in his view—tried and convicted of criminal acts that the grand jury never indicted.

B.  *Applicable Law Addressing a Motion to Amend an Indictment*

         The Oregon Supreme Court has explained that the constitutional purposes of requiring an indictment by a grand jury are threefold:

> "(1)   to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2)   to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3)   to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction."

*State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948). Under the Oregon Constitution, amendments to indictments as to form are authorized, but an amendment as to substance is not authorized unless approved by a grand jury or authorized by law. *See State v. Moyer*, 76 Or 396, 399-401, 149 P 84 (1915) (explaining only changes to form are permissible under the Oregon Constitution). Matters of form are "matters which are not essential to the charge and merely clerical errors, such as where the defendant cannot be misled to his prejudice by the amendment[.]" *Id.* at 399. A matter of substance is one that is essential to show that an offense has been committed. *Id.* at 400.

         Generally, the crime-commit date is not a material element in a criminal offense and need not be specified in an indictment. *See* ORS 135.717 (providing that the "precise

time at which the offense was committed need not be stated in the accusatory instrument, *** except where the time is a material element in the offense"); *see also State v. Lee*, 202 Or 592, 603-04, 276 P2d 946 (1954) (explaining that time is generally not a material element and need not be included in an indictment). More specifically, the crime-commit date is generally not a material element of sexual abuse. *See* ORS 163.427 (setting out the elements of sexual abuse in the first degree); ORS 163.415 (setting out the elements for sexual abuse in the third degree); *see also State v. Milbradt*, 305 Or 621, 631-32, 756 P2d 620 (1988) (concluding that time is not a material element of sexual abuse or rape).

Here, both defendant's and the state's arguments implicate two interrelated lines of case law. Both stem from the requirements of Article VII (Amended), section 5(3), of the Oregon Constitution, which provides, "Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury." One line of cases addresses whether an amendment to an indictment that was not first presented to a grand jury is permissible. A court should evaluate whether an amendment is permissible using the three-step inquiry outlined in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992); *see also State v. Haji*, 366 Or 384, 399, 462 P3d 1240 (2020) (explaining that *Wimber* "was focused on changes to the allegations concerning the crimes charged, as found by the grand jury"). The second line of cases is closely related and addresses whether the state may permissibly present evidence or a theory at trial that varies from the factual proof presented to the grand jury that formed the basis for the allegations in the indictment. To determine if a variance in proof is permissible, a court evaluates the two prongs identified in *Long*.

Although defendant and the state advance arguments under both *Wimber* and *Long*, I would follow the analysis set out in *Wimber* and its progeny because the state sought to amend the indictment, and the court allowed amendments. I would not undertake the analysis articulated in *Long* under these circumstances. *See State v. Benton*, 317 Or App 384, 398-99, 505 P3d 975 (2022), *aff'd*,

371 Or 311, 534 P3d 724 (2023) (explaining when to use the *Wimber* analysis versus the *Long* analysis).[1]

## C.  *Did the trial court err in allowing the state's motion to amend?*

Under *Wimber*, a court must evaluate three questions: (1) Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? (2) Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? (3) Was the amendment itself sufficiently definite and certain?[2]

First, the amendments did not alter the essential nature of the indictment against defendant, alter the availability of defenses or evidence, or add a theory, element, or crime. At issue are one count of first-degree sexual abuse and two counts of third-degree sexual abuse. The factual theories on which the grand jury indicted those offenses were that defendant touched R sexually when she was under 14 years old, and that he touched A sexually when she was under 18 years old. Thus, amending the indictment to include an earlier start date would not have had any implication on the victims' status as "under the age of 14 years" or "under the age of 18 years" as alleged in the respective counts, and the amendments did not affect any element of the charges. Notably, the time range would not have had to be included in the indictment at all, which further supports the conclusion that the essential nature of the indictment did not change. *See Wimber*, 315 Or at 114-15 (concluding

---

[1] As I understand the majority opinion, it relies on *State v. Pachmayr*, 344 Or 482, 185 P3d 1103 (2008), to apply the third question of *Long*—a variance analysis, *viz.*, whether the defendant was, in fact, tried on the offense that was indicted by the grand jury—after it applies the *Wimber* test. 347 Or App at 624-25. With respect, I read *Pachmayr* differently. In my view, *Pachmayr* applies *Wimber,* and, although it cites *Long* as part of its analysis, it does so to address whether the change was one of form or substance, rather than an independent analysis of variance. Thus, I do not read *Pachmayr* to suggest—as the majority opinion does—that the third question in *Long* be applied to a *Wimber* analysis.

[2] If the amendment deleted allegations, a court asks one additional question: (4) Did the remaining allegations in the indictment state the essential elements of the offenses? However, the state's amendments in this case did not delete an allegation, and thus the additional question is not applicable to this appeal.

that amendments to change dates in an indictment for sexual abuse charges did not alter the essential nature of the indictment). Ultimately, the amendments did not add a new or different theory, element, or crime.

Second, the amendments did not prejudice defendant's right to notice of the charges against him or diminish his protection against double jeopardy. The indictment independently alleged the ages of the victims at the time of the alleged crimes. The amendments also did not affect any material element of the charged offenses, and thus he had notice of the charges against him. Moreover, expanding the date range does not reduce his protection against double jeopardy. Although defendant argues that being tried and convicted of criminal acts that a grand jury never indicted on is the prejudice, I am not convinced that simply being indicted is prejudice within the meaning of the *Wimber* test given the conclusion that the amendments did not alter the essential nature of the indictment or impact defendant's notice of the charges against him. Indeed, defendant had notice; that is, the amendments were made to either match the beginning dates of the other counts of sexual abuse against the same victim or were still after the beginning dates alleged in the other counts of the same victim. Accordingly, I disagree with the majority opinion's conclusion, and I would conclude that defendant was not prejudiced as to notice of the charges against him or to the protections against double jeopardy. *See id.* (concluding that amendments to change dates in an indictment for sexual abuse charges did not prejudice the defendant's right to notice of the charges against him and to protections against double jeopardy).

Third, it is undisputed that the amendments themselves were sufficiently definite and certain.

Ultimately, the constitutional purposes of requiring an indictment by a grand jury were met here. Given the original indictment, the grand jury heard sufficient testimony to indict defendant for sex crimes against R that occurred on or between March 1, 2018, and July 23, 2020, and evidence of sex crimes against A that occurred on or between March 1, 2018, and June 30, 2020. Said differently, given that the grand jury handed down an indictment on

Counts 11, 12, and 13, that certified that it found sufficient evidence to charge defendant with sexual abuse against R, a person under 14 years old, and sex crimes against A, a person under 18 years old, the amended indictment did not alter the factual theory of the case. *See State v. Pachmayr*, 344 Or 482, 495-96, 185 P3d 1103 (2008) (explaining that the court need "not make assumptions \*\*\* about what the grand jury 'actually' intended to charge" because "the grand jury, by signing the indictment \*\*\* certified that it found sufficient evidence to charge [the] defendant with driving a car—an instrument capable of causing death or serious injury—recklessly \*\*\*. In so doing, the grand jury necessarily certified that it found sufficient evidence to charge [the] defendant with assault with a dangerous weapon," and therefore the trial court did not err by allowing the state to amend it.). Thus, the amendments made by the trial court were permissible amendments as to a defect in the form of the indictment, and the trial court did not err in granting the state's motion to amend.

Accordingly, I respectfully concur in part and dissent in part.